## PERCIVAL P. OLDERSHAW *et al.*

### *v.*

## STEPHEN S. KNOWLES.

*Filed at Ottawa November 10, 1881.*

1. EVIDENCE—*on cross-examination—as to character of transaction between commission merchant and his customer—on margins.* In a suit by a commission merchant or broker to recover of a person for whom a purchase was made, for loss on a re-sale, for want of putting up of a further margin, the defendant will have the right, on cross-examination, to inquire when, where, and in what manner the purchase was made for him, and whether the plaintiff has settled the purchase, and if so, what was paid, to whom, and the manner it was paid, to show whether the mode of dealing was fair, and free from fraud and injustice or wrong to him.

2. A commission merchant has no right to adopt methods in making purchases for his customers that he may refuse to explain, or that are so intricate or tortuous that they are incapable of being explained to the full comprehension of an ordinarily intelligent jury.

3. In a suit where the plaintiff claims that he made a contract for lard for the defendant, for future delivery, and that in consequence of the defendant's failure to indemnify him against loss he was compelled to sell the lard, and pay the loss to the person from whom the purchase was made, and that he has paid and settled the loss, and has the right to recover the same of the defendant, the latter will have the right to learn the particulars of the entire transaction, on the trial.

4. PRACTICE IN THE SUPREME COURT—*what may be assigned as error.* On appeal from the last judgment of the Appellate Court in a case, this court can not consider the propriety of the admission of evidence on a second trial in the lower court, under the prior ruling of the Appellate Court when the case was first before it.

5. ERROR WILL NOT ALWAYS REVERSE—*as to admission of evidence.* The admission of evidence technically inadmissible, to prove a fact already proven beyond dispute by unobjectionable proof, the improper evidence not being calculated to mislead the jury, affords no ground for a reversal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the HON. ELLIOTT ANTHONY, Judge, presiding.

Messrs. NEEDHAM & MILLER, for the appellants.

Mr. A. B. JENKS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellants were commission merchants or brokers, and members of the board of trade in Chicago. As such they purchased, at the instance of appellee, in the month of February, 1877, for April delivery, a quantity of lard, at a specified price. Appellee's name was not known in the transaction, but he placed in the hands of appellants a sum of money as a margin. After the purchase, and on the 20th of that month, there was a heavy decline in the price of lard, leaving a difference between the price on that day and the contract price, of over $2000. Appellants called on appellee for $2000, to protect them on the contract. On the evening of that day, Culbertson, a member of appellants' firm, called on appellee, and notified him that unless he put up the money they would sell the lard. It was then agreed that appellee should go home to Jacksonville that night, to see if he could raise the money to make his margins good, and if he succeeded he was to return with it the next day. To this point there is no dispute as to the facts.

Appellants contend that it was further agreed, that if appellee succeeded in procuring the money, he was to telegraph appellants, and they would not sell him out, but would await his return. But appellee claims the agreement was, that he should return to Jacksonville, and if he obtained the money, and returned with it the next day, they would hold it, and would not sell. He went to Jacksonville, obtained the money, and returned to Chicago, reaching there at five o'clock on the afternoon of the 21st, with the money; but before his arrival they had sold, as they claim, at a loss of $2400 on the contract; and deducting from that sum the $700 which appellee had deposited with appellants as a mar-

gin, and adding their commissions, they claim there is due
to them $1858.10, for the recovery of which they sued him
in assumpsit.

Appellee filed a plea of set-off, claiming that by the sale
of the lard, not only without authority but against instruc-
tions, appellants had no right to recover anything, but, on
the contrary, he was entitled to recover back the $700 he
had deposited with them.    On a trial in the Superior Court
of Cook county the jury rendered a verdict against plaintiffs,
and in favor of defendant, for $700, and plaintiffs appealed
to the Appellate Court for the First District.    On a hearing in
that court the judgment of the Superior Court was affirmed,
and they bring the record to this court, and assign errors.

The jury having found the facts in favor of appellee, and
the Appellate Court having, by affirming the judgment, found
them the same way, we are precluded by the statute from
considering them, further than they are important in discuss-
ing questions of law arising upon them.

It is first insisted that the Superior Court erred in permitting
appellee's counsel, on cross-examination, to examine Culbert-
son as to the manner of settling the identical or original con-
tracts for this lard, by the usage of the board of trade.    It is
insisted that appellee had no interest in the contract made
upon his order, and for that reason it was improper to inquire
into that matter, and that it was intricate, and its inves-
tigation tended to confuse and prejudice the jury.    There
can be no question that when appellants are claiming to
recover money from appellee, as having been paid by them
on a contract they claim to have made for him at his request,
he has a right to know when, where, and with whom it was
made; and he has the further right to know if they have paid
or settled it, and if so, what was paid, to whom, and the
manner in which it was paid.    He has a right to know; and
have the jury to know, whether the mode of dealing adopted
by appellants was fair, and free from all fraud, injustice or

wrong to him. They have no right to adopt methods · in making purchases for their customers that they can refuse to explain, or that are so intricate or tortuous that they are incapable of being explained to the full comprehension of ordinarily intelligent men. They can not fall back behind methods that will not bear scrutiny, or which are too complicated to be understood by men of ordinary intelligence and business capacity. Appellants claim that they made the contract for appellee; that he failed to indemnify them; that they were therefore compelled to sell the lard, and pay the loss to the person from whom they purchased, and that they have paid or settled the loss, and have the right to recover the amount from appellee. To learn the particulars of the entire transaction we are of opinion that the examination was proper, and the court committed no error in permitting it.

This fully answers the objection, that as the Appellate Court had held such an examination, when the case was previously before it, immaterial and improper, it was therefore error in the Superior Court to permit the examination. Be that as it may, we have nothing before us but the last judgment of the Appellate Court. It is from that judgment plaintiffs appeal to this court, and which they seek to reverse. The previous judgment of that court is not before us, and we have no power to examine or review it. There is no force in this objection.

It is next insisted that the Superior Court erred in permitting appellee's pass-book to be read in evidence, showing he had $2000 deposited in the Stock Yards Bank to his credit, as tending to show he had returned to Chicago on the 21st of February, with that amount ready to put up, according to agreement, as a further margin on the purchase of the lard. We deem it unnecessary to determine whether this evidence was, or was not, strictly proper, because there is an abundance of evidence, independent and outside of that evidence,

to prove, beyond a reasonable doubt, that appellee did have the money in Chicago on the afternoon of the 21st of February. The pass-book only corroborated the other evidence. To reverse for the admission of improper evidence, we must be able to see that it may have worked injury to the party objecting. We are unable to see that it could have misled the jury, and for that reason a reversal can not be had on that ground, even if it was not admissible. To entitle a party to a reversal he must show error that has, or presumably has, worked him an injury. Appellants have failed to show such error in this record, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*