John Kotulla and Florence Kotulla, Plaintiffs-Appellees,
v. Great Lakes Terminal and Transport Corpora-
tion, an Illinois Corporation, and Walter J. Tabaka,
Defendants-Appellants.

Gen. No. 51,510.

First District.

October 31, 1968.

TRAPP, J., dissenting.

Menk, Johnson and Ryan, of Chicago (John Cadwalader Menk, of counsel), for appellants.

Herbert F. Stride, of Chicago (Herbert F. Stride and Louis S. Elovitz, of counsel), for appellees.

MR. JUSTICE CRAVEN delivered the opinion of the court.

This case is an appeal from judgments entered in the Circuit Court of Cook County upon jury verdicts in favor of plaintiff, John Kotulla, for $120,000 for injuries to him and in favor of Florence Kotulla, his wife, for $10,000 for loss of his consortium. A third-party complaint by Central Waxed Paper Company, Kotulla's employer, was filed upon allowance by intervention, and dismissed by directed verdict by the court at the close of all evidence.

In the late afternoon of June 23, 1961, plaintiff John Kotulla, employed by Central Waxed Paper Company, intervening petitioner, was operating a forklift at the loading dock of his employer in Chicago, unloading drums of chemical about two feet across and four feet high, weighing about four hundred pounds, being delivered by a truck of defendant, Great Lakes Terminal and Transport Corporation, driven by defendant, Walter J. Tabaka, when

Kotulla was injured. At the time of the occurrence, Kotulla had driven his forklift truck with some "skids" or "pallets" on it to the loading dock. He was engaged in unloading the chemical drums from a Great Lakes truck driven by Tabaka.

The unloading operation consisted of lifting the drums onto the wooden "skids" or "pallets," which were approximately four feet square and had legs which raised them off the floor so that the forks of the lift truck could be placed under the floor of the pallet and lift up the pallet after the drum had been placed on it. Then the forklift truck would take the load into the plant from the loading dock. The loading dock was enclosed and had space for three trucks to load or unload at the same time. It was concrete and had three stalls, each of which had a steel loading platform or lift which could be raised or lowered hydraulically in order to be level with the tailgate of a truck being loaded or unloaded. At the edge of the steel "lift" was a hinged metal plate which formed a "bridge" between the dock and the truck. The dock platform from a truck to the plant proper was four to five feet wide. The dock was some four feet above the level of the floor below where the wheels of the truck would run, referred to as the "pit."

A sharp dispute exists as to the manner in which the accident occurred. It is certain that in the course of unloading the drums from the truck of defendants, plaintiff was injured by one of the drums coming into contact with him. This rendered Kotulla unconscious. He was hospitalized and treated for severe injuries, including an alleged eye injury.

At the trial, Kotulla testified that there were no eyewitnesses to the accident; that just prior to the accident three trucks had been unloading at the dock, but that one had left; that he was unloading the Great Lakes truck, having placed a pallet in the middle of the dock

459

metal plate behind the truck, about two feet from the edge of the dock, when he saw the driver of the truck (Tabaka) roll a drum out of the truck and put it on the northeast corner of the pallet; that he was at the northwest corner of the pallet; that when Tabaka tried to get the drum onto the pallet, he lost his grip on the drum and the drum came onto Kotulla, kept falling, and rolled on him.

Kotulla, earlier, had filed an application for Workmen's Compensation award against his employer, Central Waxed Paper Company, and received an award. At the hearing in that proceeding, someone and one-half years after the accident, Kotulla testified that the last thing he remembered of his working was that he was stacking steel drums, four to a skid, and then he woke up in the hospital.

Tabaka, driver of the truck being unloaded, testified at the trial that he had unloaded one drum and went back for a second drum; that he took it out of the truck himself and placed it on a slant resting on the pallet; that he pushed the drum up to Kotulla and asked him if he had it, and after Kotulla said he had, Tabaka then released the drum, saw Kotulla had it, and went back to the truck for another drum. When he brought out the next drum, he didn't see Kotulla, so he left the drum at the end of the truck and went to another door to the plant. He testified that as he turned to go back to the truck, he saw Kotulla lying in the pit below the loading dock on his back with the barrel "kind of in between him, and his arm was thrown out, . . . ." (Rec p 116.) He and another man removed the drum from Kotulla, who was bleeding and appeared unconscious.

Considerable controversy centers around a witness, Billy Phillips, who testified he was at the loading dock with a truck at the time of the occurrence. He testified that Kotulla was trying to place a drum on the pallet and stepped backward off the dock, whereupon the drum

fell on him. After the occurrence, Phillips gave his name and address to Mr. Lynn, of Central Waxed, Kotulla's employer, and told him what he saw. Phillips gave a statement at his home sometime later to a person from the office of Kotulla's attorney. He stated it was possible he could have turned away just before the occurrence, but did definitely see Kotulla when he stepped off and saw Kotulla go over with a drum tilted and coming toward him when he stepped back and fell.

On this appeal, defendants contend that the verdicts are against the manifest weight of the evidence in that plaintiff Kotulla was contradicted by irreconcilable differences in his own statements and only a "revived memory" of how the accident occurred; that his testimony was contradicted by the only eyewitness other than the parties; that he was contradicted by defendant's driver; that his exaggeration of his injuries cast doubt upon his veracity and that his version was not probable. Defendants further contend that the verdicts were the result of sympathy and prejudice, induced by improper conduct of counsel in injecting improper matters, by remarks before the jury on voir dire examination of jurors by which he referred to insurance companies as being involved and behind the defense of the case; in calling Kotulla's family physician to testify as to changes in his condition after the accident, although the physician did not treat him for the injuries resulting in this accident; and in repeating questions so as to require defendants' counsel to make continued objections and appear to be a chronic objector. Defendants further assert as error that the identity of the only eyewitness (Phillips) was concealed from them until just before trial; that dismissal of the third-party complaint of Kotulla's employer, Central Waxed Paper Company, at the close of all the evidence, and the refusal to sever the third-party issue from this trial, was prejudicial. This contention asserts that the defendants are placed in a

difficult psychological position before the jury by the alleged concealment of Phillips and defendants' stipulation to waive appeal of the directed verdict on the third-party claim. Defendants had bargained to waive such matter in exchange for an agreement that the directed verdict be handled by court order only rather than by direction to the jury.

██ ██ A studied reading of the record of the trial below leads us to conclude that the testimony of plaintiff John Kotulla in the Workmen's Compensation hearing, which defendants contend is inconsistent with and contradictory to his testimony at the trial as to the events of the accident, falls far short of contradiction. The question asked him at the Compensation hearing was a specific question of what the last thing was that he recalled at the loading dock on June 23, 1961. No attempt appears in the record to have been made by defendants' counsel to fully follow up this line of questioning, although some further questions were asked. This was cross-examination and did not permit the witness to testify at length to the entire events involved in the accident. Other testimony of his last recollection of the manner in which the accident occurred appears to have been at times when he was in serious condition, suffering from multiple injuries, in shock, with injuries to the skull, facial bones and left mandible. One such occasion was on the date of the accident, and another a month and a half later. We can conclude only that such testimony, whether conflicting, contradictory, or not, was properly submitted to the jury. The jury observed the witnesses as they related this testimony. The verdict is not against the manifest weight of the evidence. Read v. Cummings, 324 Ill App 607, 59 NE2d 325 (1st Dist 1945); Tihay v. Aurora City Lines, 79 Ill App2d 107, 223 NE2d 171 (2nd Dist 1967).

Further, it is not for us to determine the credibility of the testimony of the witness Phillips when viewed in

the light that plaintiff Kotulla and defendant Tabaka both testified that no persons other than they were present on the loading dock at the time of the accident and that Tabaka, at the trial, attempted to change his testimony on that matter from testimony he had given on a discovery deposition. We can only assume that the jury, in its deliberations, considered this as impeaching testimony of the defendant Tabaka.

 Likewise, the contention that Kotulla's position that the accident caused injury to his eye which it is contended was an exaggeration of his injuries casts doubt upon his veracity and the truth of his entire testimony, does not appeal to any sense of justice in this court. The testimony of Dr. Linkowski that he made a physical and eye examination of Kotulla in 1957 and approved him for employment was subject to at least consideration by the jury along with the testimony of other doctors offered by defendants that Kotulla had a blindness which was congenital. The extent of his injuries as testified to by Doctors Hrejsa and Manfredi was such as to justify the jury not only in disbelieving this claim of exaggeration, but as well to account for the amount of the jury's verdict.

 The verdict of a jury will not be disturbed as being contrary to the manifest weight of the evidence unless, in considering all the evidence, it is conclusive that an opposite verdict should have been reached. We cannot say that Kotulla's testimony and the evidence presented on his behalf were contradicted by the probabilities. Our duty is not to juggle probabilities, in any event. Questions of this nature should never be determined as matters of law where reasonable men would arrive at different results. Under our judicial system, the jury is the fact-finding body to determine such issues. Roth v. Lissner Iron & Metal Co., 88 Ill App2d 352, 232 NE2d 534 (1st Dist 1967); Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74 (1954).

■ The matters complained of as being prejudicial and resulting in the present verdicts because of prejudice and sympathy could not have caused reversible error in this case when tested in the light of the evidence. The dismissal of the third-party complaint is not assigned as a ground of appeal, and therefore the merit or lack of merit in such dismissal cannot be considered by this court as a ground for reversal or remandment.

Finding no reversible error, the judgments of the trial court must be affirmed.

Judgments affirmed.

SMITH, P. J., concurs.

TRAPP, J., dissents.

TRAPP, J., dissenting:

This dissent is presented in the light of policy expressed in related context by the opinion in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, concerning verdicts which are "not factually sustainable." It is frequently said that a reviewing court must set aside a verdict which is clearly against the manifest weight of the evidence. This may result where a state of facts is established which makes the conclusion of the jury inconsistent with the evidence. Acosta v. Gill, 48 Ill App2d 186, 198 NE2d 741. In Turner v. Seyfert, 44 Ill App2d 281, 194 NE2d 529, a verdict for the defendant was reversed as against the manifest weight of the evidence, primarily upon physical evidence establishing speed through skid marks. In May v. Columbian Rope Co., 40 Ill App2d 264, 189 NE2d 394, the court stated that the reasonableness of the testimony of the plaintiff must be considered and his testimony that the rope was new was examined in the light of the apparent condition of the rope, and order for a new trial was af-

firmed. In Carter v. Winter, 32 Ill2d 275, 204 NE2d 755, the Supreme Court stated that the plaintiff's conduct should be considered in the light of his own testimony concerning speed, which the Court deemed "incredible," as well as the testimony of the other witnesses. In criminal cases it has been stated in another way—a conviction may be set aside on review where the judgment rests on doubtful, improbable or clearly insufficient evidence. People v. Hightower, 20 Ill2d 361, 169 NE2d 787; People v. Turner, 82 Ill App2d 10, 226 NE2d 667; People v. Owens, 73 Ill App2d 108, 219 NE2d 733.

The opinion does not investigate factors present in the record which so contradict plaintiff's evidence and create such a high degree of improbability that his theory should be deemed not credible to reasonable men.

While the majority note that the testimony of the defendant, Tabaka, is corroborated by that of the witness, Phillips, a stranger to all parties mediately and immediately interested in the event, they conclude that the jury might test his credibility, and presumably disregard his testimony, in the light of the fact that both the plaintiff and Tabaka testified that they had no recollection of seeing Phillips on the "dock." Whether the term "dock" in such testimony was employed literally and strictly to describing the loading platform, or more broadly to the entire loading area, this conclusion is not reasonable in the light of uncontradicted evidence that Phillips was present. Francis Lynn, traffic supervisor for Central Waxed Paper Co., testified that almost immediately after the event he talked with Phillips concerning the occurrence, made notes of what Phillips said, and Lynn's memorandum listing the names and addresses of both Phillips and Tabaka is in evidence as an Exhibit. Under such circumstances it is not reasonable to conclude that the jury would be entitled to disregard otherwise unimpeached testimony for the reason stated in the opinion.

We suggest that plaintiff's description of the event, examined in the light of the physical facts in evidence, contradicts his testimony to such degree that it may properly be deemed improbable. Plaintiff gave no specific description of the pallet, but one Merkel, a receiving clerk on the date in issue, described the pallets used on the dock and referred to a photograph in evidence, stating that such pallets were about 6 inches high, i. e., the load bearing surface of the pallet rested on wooden pieces which raised such surface about 6 inches above the floor. The pallet was described as being about 45x45 inches, or slightly less than 4 square feet.

The following are taken from plaintiff's testimony: Defendant's truck was backed up to the southerly edge of the westernmost loading dock. A platform, which formed a part of the dock and could be raised or lowered to the level of the truck bed, had a north-south dimension of 8 feet and an east-west dimension of 5 feet. From the west edge of such platform, the dock extended west about 6 feet. A photograph, in evidence as plaintiff's Exhibit 8, scaled to stated measurements, shows steps about 3 feet wide from the dock to the floor of the area located at the west wall of the structure. East from the steps a rail extends along the edge of the dock an apparent 2 feet or so to a point a foot or a foot and one-half west of the west edge of the platform first described.

Plaintiff described his acts and positions: He placed the pallet so that its southerly edge was about 2 feet north of the south edge of the platform, the 4 feet square pallet being centered on the 5 foot east-west dimension. Tabaka rolled out the first drum described as 2 feet in diameter and 4 feet tall, weighing some 400 pounds. This was placed on the northeast corner of the pallet. Tabaka says that plaintiff helped roll this drum upon the pallet. Plaintiff says that he just stood there.

466

Plaintiff describes himself as standing at the northwest corner of the pallet. When Tabaka moved the first drum onto the northeast corner of the pallet, he was then approximately 6 feet from the edge of the dock. Upon cross-examination he states that when Tabaka returned with the second drum, "I was still standing there." Upon this version by plaintiff he would be 6 feet north of the edge of the platform and about 4 feet north of where the drum would first come into contact with the 6-inch elevation of the load surface of the pallet. Upon this description we can find no vector or flow of force by which the drum at issue could be propelled onto the pallet or fall from it so that it would strike plaintiff and cause the plaintiff and the drum to fall to the south of the platform and west of the truck.

At another point on direct examination, he stated that he was standing a foot or two north of the edge of the dock, i. e., the same distance from the edge as was the pallet, and that he stood two feet west of the pallet. He testified that as Tabaka rolled the barrel it would first hit the edge of the pallet, and that he thinks that Tabaka had one end of the barrel on the pallet which then fell southwest. It is not claimed that the pallet was moved or shifted by the impact of the rolled drum and it would seem that the pallet was, in fact, strongly anchored by the weight of the first drum. It is not claimed that the drum was propelled over and across the pallet with its 6-inch elevation above the floor so as to strike the plaintiff. From plaintiff's position 2 feet west of the pallet and 2 feet north of the edge of the dock, he would appear to be north of the rail of the platform. Such rail was not, so far as the testimony shows, a factor connected with the fall at issue. Under plaintiff's testimony we can find no valid physical reconstruction of the fall of the drum which would strike the plaintiff causing him to fall to the

southwest beneath the drum. The record is replete with plaintiff's statements which are incomprehensible on review because he pointed out on the photograph that he stood here or there. Thus, it is necessary to review this matter on physical facts and distance relations actually described in evidence.

From a scrutiny of the physical factors shown by plaintiff's testimony, it is reasonable to conclude that there is overwhelming contradiction of his testimony concerning the acts alleged to create liability. These contradictions are in addition to the elements impeaching the testimony of plaintiff given passing reference in the opinion. Such contradictions should be considered in the light of the testimony of the other occurrence witnesses, Tabaka and Phillips. Carter v. Winter, 32 Ill2d 275, 204 NE2d 755.

For the reasons stated, the verdict is deemed contrary to the manifest weight of the evidence. Since the record does not conclusively demonstrate that no new or different evidence would not be available at a new trial, the cause should be reversed and remanded.