Gladys Cleo Tipsword, Admr. of the Estate of Floyd H. Tipsword, Deceased, Plaintiff-Appellant, *v.* Armada M. Melrose, Defendant-Appellee.

(No. 72-151;

Third District—September 18, 1973.

*Rehearing denied October 15, 1973.*

Philip C. Zimmerly, of Champaign, and Francis J. Householter, of Kankakee, for appellant.

Ackman, McKnelly, Reagan & Taube, of Kankakee, (Robert McKnelly, of counsel,) for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Kankakee County.

The plaintiff, Gladys Cleo Tipsword, sued both individually and as the administrator of the estate of Floyd H. Tipsword to recover damages for the wrongful death occasioned by the alleged negligence of the de-

fendant, Armada M. Melrose, in driving her automobile and failing to render assistance to an injured person. A second count was brought by the widow individually to recover for funeral and burial expenses.

A jury trial was held and the jury returned verdicts for the defendant and by their answer to a special interrogatory found contributory negligence on the part of the decedent, Floyd H. Tipsword.

The accident which led to the death of Floyd H. Tipsword took place at approximately 8:30 P.M. on August 22, 1968, at an intersection of two rural roads near Essex, Illinois. The deceased was driving a pickup truck eastbound on a freshly graveled east-west road and the defendant was proceeding north on a dusty gravel road. The defendant testified that when she approached the intersection she stopped, looked carefully both ways, and proceeded slowly into the intersection. Her line of vision to the west, the direction from which the decedent was driving, was approximately one-half mile.

She further testified that she did not see any lights, plumes of dust, or approaching vehicle until just before the impact when she saw the lights of the Tipsword vehicle.

There was testimony adduced for the plaintiff that the Tipsword vehicle had its lights on and was raising a plume of dust as it proceeded down the road. The further testimony of the driver following the Tipsword vehicle was that he followed the decedent's vehicle for about a mile and a half at a speed of twenty-five miles per hour, neither gaining or losing on the Tipsword vehicle, and that the vehicle was causing a big plume of dust. He further testified that when he saw a big cloud of dust and the lights of the Tipsword vehicle skewered around it took him approximately a minute to cover the last half mile to the scene of the accident.

After the collision Mrs. Melrose called out to the decedent to see if he were hurt, and ran for help, and caused a local rescusitator squad to be summoned.

The cause of death was from hemorrhagic shock or loss of blood.

A further recital of essential facts will be set forth as they become pertinent to the issues presented for review.

The issues presented for review are (1) whether the jury was improperly instructed concerning the right of way statute, (2) whether the investigating state policeman was improperly allowed to reconstruct the collision, (3) whether the special interrogatory was improper in form, (4) whether the answer to the special interrogatory was contrary to the manifest weight of the evidence, (5) whether the verdict was contrary to the manifest weight of the evidence.

Directing our attention to the first issue raised, it is apparent that the

plaintiff is primarily concerned with defendant's instruction 13A which was given to the jury. This instruction was as follows:

"At the time of the occurrence in question there was in force in the State of Illinois a statute governing the operation of motor vehicles approaching intersections.

If two vehicles are approaching an intersection from different highways at such relative distances from the intersection that if each is being driven at a reasonable speed, the vehicle on the right will enter the intersection at about the same time, then this statute requires the driver of the vehicle on the left to yield the right of way to the vehicle on the right.

On the other hand, if two vehicles are approaching the intersection from different highways at such relative distances from the intersection that if each is being driven at a reasonable speed, the vehicle on the left will enter the intersection and pass beyond the line of travel of the vehicle on the right before the vehicle on the right enters the intersection, then this statute requires the driver of the vehicle on the right to yield the right of way to the vehicle on the left.

The fact that a vehicle has the right of way does not relieve its driver from the duty to exercise ordinary care in approaching, entering and driving through the intersection.

If you decide that the decedent or the defendant violated the statute on the occasion in question, then you may consider that fact together with all of the other facts and circumstances in evidence in determining whether or not the decedent or defendant was contributorily negligent or negligent before and at the time of the occurrence."

Essentially this instruction is the one set forth in Illinois Pattern Jury Instructions as instruction 70.02 with the exception that an additional paragraph was added for the purpose of identifying the respective drivers of the motor vehicles to further make the instruction applicable to both the decedent and the defendant.

The plaintiff first contends that the instruction is prejudicial in that it implies a rigid, absolute right-of-way at an intersection to the vehicle on the right; and that the courts of our state have consistently held that the vehicle on the right does not have such an absolute right-of-way. We quarrel not with the cases cited by the plaintiff to the effect that the vehicle on the right is always entitled to the right-of-way; however, we do not find such rigidity or absoluteness in the instruction given. A mere reading of the fourth paragraph of the instruction belies such an interpretation since it is specifically stated:

"The fact that a vehicle has the right of way does not relieve its driver from the duty to exercise ordinary care in approaching, entering and driving through an intersection."

Certainly such language cannot be construed to be either argumentative or peremptory. The instruction is intended and designed for open intersection cases such as the one in question and we deem it to be couched in terms fair to the parties involved.

The plaintiff would further argue that the defendant by her conduct waived the so-called statutory right-of-way and for this reason it was error to give instruction 13A. In considering this contention we must examine the record in order to ascertain as nearly as possible the factual situation surrounding the fatal accident. Such an examination discloses that the collision occurred at a rural intersection which was uncontrolled by traffic signs, signals or markings. As we have previously stated the plaintiff's decedent was traveling east and the defendant north, thereby placing the defendant on the right. The collision occurred at a time after sundown but before the setting in of darkness. Both roads being traveled were of gravel surface and quite narrow, ranging from ten to twelve feet in width. Visibility was hampered by tall growing corn in fields at all corners of the intersection. Both vehicles were using their headlights and both drivers were familiar with the intersection. Upon approaching the intersection the defendant stopped her vehicle so that upon reaching it her head was from six to eight feet south of the east-west roadway. After looking both to the left and right and failing to see anything she proceeded into the intersection and almost immediately thereafter the collision occurred.

The plaintiff's theory that the defendant's conduct is such as to constitute a waiver of the right-of-way privilege is based upon the proposition that such privilege is waived when one proceeds into an intersection without first maintaining a proper lookout. We agree with the holdings in the cases cited by the plaintiff, to-wit, *Kirchoff v. Van Scoy*, 301 Ill. App. 366, 22 N.E. 966; *Roth v. Kanchier*, 91 Ill.App.2d 111, 234 N.E.2d 59, in that the statutory privilege of right-of-way to the vehicle on the right can be waived but in these cases such waiver resulted from the driver of the vehicle on the right failing to maintain a proper lookout or failing to exercise due care for his own safety. No such failure to exercise due care or maintain a proper lookout exists in the instant case. On the contrary, we can only conclude that if plaintiff's decedent had used the same degree of care as that exercised by the defendant in approaching and crossing the intersection then there would have been no collision and resultant lawsuit.

■■■ Why the defendant failed to see lights, plumes of dust or some indication of the plaintiff's decedent's approach to the intersection will never be known but her testimony as to the care she exercised is unrefuted and a party has the right to have the jury instructed on his theory of a case and the question as to what issues have been raised by the evidence falls within the discretion of the trial court. (See *Sherman v. City of Springfield,* 111 Ill.App.2d 39, 250 N.E.2d 537; *Blanchard v. Lewis,* 414 Ill. 515, 112 N.E.2d 167; *Pantaleo v. Gamm,* 106 Ill.App.2d 618.) We do not believe that the trial court abused its discretion in giving instruction 13A to the jury. The question as to which driver has the right-of-way at an open intersection is indeed a question of fact for the jury and such an instruction is proper in order to assist the jury in making its determination. *Bentley v. Olson,* 324 Ill.App. 281, 58 N.E.2d 316; *Payne v. Kingsley,* 59 Ill.App.2d 245, 207 N.E.2d 177; *Gauger v. Mills,* 340 Ill.App. 1, 90 N.E.2d 790.

The plaintiff asserts that instruction No. 14 which was given to the jury reinforces, cumulates and compounds the error which resulted in the giving of instruction 13A. Having determined that the presentation of 13A standing by itself did not constitute error we will now ascertain what effect if any was had upon it when considered in conjunction with instruction 14 which stated:

> "It is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to exercise ordinary care at all times to avoid a collision."

As stated in the committee notes in Illinois Pattern Jury Instructions, Second Edition, I.P.I. 70.01, page 260, this is an instruction defining the common law duty of persons operating motor vehicles on public highways. It places the same burden of care on all drivers and rather than having a prejudicial effect as far as the plaintiff is concerned we deem it to be a necessary instruction in cases such as the one we are considering in that it provides a guideline of fairness to all parties concerned.

The plaintiff likewise argues that instruction 15-A which was given compounds the alleged errors of instructions 13-A and 14. Instruction 15-A was as follows:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> 'The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection * * *, when traveling upon any narrow * * *

roadway, or when special hazard exists * * * by reason of * * * highway conditions. Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.'

If you decide that the decedent or the defendant violated the statute on the occasion in question, then you may consider that fact together with all of the other facts and circumstances in evidence in determining whether or not the decedent or defendant was contributorily negligent or negligent before and at the time of the occurrence."

The plaintiff argues that there was no evidence of unreasonable speed of the decedent's vehicle prior to the collision and therefore there was no violation of a statute which proximately contributed to the collision. It should be noted that the instruction is drafted to apply equally to the plaintiff's decedent and the defendant.. In substance it calls attention to an existing statute which provides that a driver must decrease speed when approaching and crossing an intersection, when traveling upon a narrow highway or when a special hazard existed as the result of a highway condition. The instruction further places upon the jury the duty to determine in light of all the evidence as to whether this statute was violated and therefore a driver was negligent or contributorily negligent.

The record makes it clear that in the instant case the highway traveled by both drivers was narrow and that vision at the intersection was obscured by growing corn. There is evidence that plaintiff's decedent was at a considerable distance behind being followed by a driver Lloyd Wells, who was driving at approximately 25 miles per hour and that at such speed Wells' vehicle neither closed the gap or fell further behind the decedent as he followed him. Further testimony was adduced from Wells that he traveled behind the decedent for only a mile or less and that he never noticed the brake lights coming on decedent's vehicle. There is evidence in the record that the decedent did make an emergency application of his brakes when some 82 to 84 feet from the point of impact. In the light of this evidence we find that no error resulted from the giving of instruction 15-A. It was within the province of the jury under the circumstances existing to determine whether or not the statute referred to in the instruction was indeed violated. We cannot agree with the plaintiff that the record was barren of any unreasonable speed on the part of the decedent in view of the circumstances, to-wit, narrow highway, obscured visibility and skid marks. The plaintiff appears to be complaining that there was cast upon her the burden of proving freedom

from contributory negligence but this burden was in this case as in all such cases upon the plaintiff.

When considering instructions 13-A, 14, and 15-A, individually and in conjunction with each other we fail to find irregularities of such consequence as to provide grounds for reversal.

The second issue raised by the plaintiff is that the trial court committed reversible error in permitting a state trooper to testify as to the point of impact of the vehicles and the paths of the vehicles after impact. After testimony elicited on direct and cross examination the trooper then diagramed for the jury his conclusion as to the point of impact and the manner in which they collided. The trooper testified that it was his duty to take measurements and make a report concerning the collision and that he had investigated approximately 1,000 such accidents and was trained to arrive at conclusions regarding conclusions based upon physical evidence found at the scenes and statements received from witnesses.

It is the position of the plaintiff that the trooper's testimony can only be justified if it falls within the realm of expert testimony and then its admissibility rests within the sound discretion of the court only if certain criteria are met. The requisite criteria are set forth in the case of *Abramson v. Levinson*, 112 Ill.App.2d 42, 250 N.E.2d 796. In *Abramson* the reviewing court held that certain factors should be present before the testimony of a reconstruction expert is entitled to admission into evidence. The court outlined these factors in detail and are as follows:

"1. The expert has the necessary expertise as a result of education, training and experience in the specific area about which he expresses an opinion,

2. The area of inquiry should require the employment of principles of physics, engineering or other science or scientific data beyond the ken of the average juror,

3. The opinion of the expert cannot be naked, but must come clothed in evidentiary facts in the record, the inferences reasonably arising therefrom and must be elicited by hypothetical questions containing substantially all of the undisputed facts in evidence relating to the issue about which an opinion is sought, and

4. There must be a need apparent from the record in the case for scientific knowledge, expertise and experience which will aid the jury to a correct and a just result."

As it can be noted *Abramson* sets forth stringent requirements which must be met before reconstruction testimony from an expert witness can be received in evidence, however, such stringency is not necessarily a

requisite in each and every case where the question presented is the admissibility of an expert's opinion. We believe the case that resolves the question presented in the instant case is that of *Diefenbach v. Pickett*, 111 Ill.App.2d 80, 248 N.E.2d 840.

The reviewing court's language in *Diefenbach* clearly directs itself to the precise question which confronts us in this appeal. The court stated:

"A corporal of the Illinois State Police, who had investigated approximately 900 automobile collisions testified over objection that it was his opinion based upon the location of the vehicles before they had been moved and the location of debris, the collision between the Pickett and Olso vehicles occurred approximately 3 feet east of the pavement, and that the collision between the Pickett and Diefenbach vehicles occurred in the south bound lane of traffic. Defendant contends that the evidence was inadmissible, because it required no special knowledge but was within the knowledge of all persons of common education and experience, and the jury could have drawn its own conclusions from the simple facts; that such expert evidence put undue emphasis on defendant's being at fault. Admissibility under the circumstances here presented, rested within the sound discretion of the trial judge, and was not abused. Thomas v. Cawgin, 43 Ill.App. 2d 336, 340, 193 N.E.2d 233, 235, and citations therein."

The criteria set forth in *Abramson* if followed without deviation would have the practical effect of barring reconstruction testimony in almost every instance if the witness was a state trooper and we do not believe this to be a desirable effect.

As to the plaintiff's contention that the trooper's testimony was not necessary since there were adequate eye-witnesses we can only conclude that such contention is not supported by the record. The defendant testified that she had no knowledge as to the movement of her vehicle or the decedent's vehicle after the impact and the witness Wells stated that he did not see the impact.

We note that none of the trooper's testimony was contradicted either by witnesses or photographs and therefore it is impossible for us to conceive how such testimony could have been prejudicial to the plaintiff. Lacking a showing of prejudice you also lack error of sufficient import to vitiate a verdict. See *Adamaitis v. Hesser*, 56 Ill.App.2d 349, 206 N.E.2d 311.

The plaintiff also asserts that a special interrogatory submitted to the jury was in improper form. The interrogatory was as follows:

"Question: Do you find that there was negligence on the part of

the deceased, Floyd H. Tipsword, that proximately contributed to cause his death?"

The jury answered this interrogatory in the affirmative. The plaintiff raises several objections to the interrogatory, the first being that it was ambiguous in that it did not differentiate between the two theories upon which plaintiff sought relief. Plaintiff during the trial did proceed on two theories of recovery, to-wit, (1) negligence on the part of the defendant in causing the fatal collision and (2) negligence on the part of the defendant not in causing the collision but rather in failing to render proper assistance after a collision.

The plaintiff's complaint as originally drafted and filed falls in the classification of being a standard one for wrongful death which resulted from negligence which caused a collision; however, on the second day of the trial the plaintiff was permitted to amend her complaint which had the effect of adding an entirely different theory for basis of recovery. Sub-paragraph (h) was added to paragraph six of the pleading which alleged:

"(h) Negligently failed to stay at the scene of the collision and render assistance, contrary to Ill. Rev. Stat. Chap. 95½, Sec. 135."

The following paragraph of the complaint provided:

"(7) That as a direct and proximate result of the negligence of the defendant, Armada M. Melrose, as aforesaid, her vehicle was caused to and did collide with the vehicle driven by Floyd H. Tipsword and as a direct and proximate result thereof Floyd H. Tipsword sustained injuries from which he died on August 22, 1968."

An examination of the complaint as amended makes it patently clear that it presented an inconsistency that could only create difficulty, for how is it possible to cause a collision by failing to stay at a scene of a collision and render assistance? The plaintiff was permitted to consolidate two separate and distinct theories of recovery into the same count of a complaint. This impropriety was repeatedly called to his attention by counsel for the defendant but plaintiff persisted in her course of action thereby creating an ambiguity of her own choice. A special interrogatory must be directed towards the determination of an ultimate fact and the one submitted by the defendant was so drafted. It is true that the jury's affirmative answer to the interrogatory in view of the plaintiff's theory of "duty to render assistance" can be charged with creating an ambiguity; however, the cornerstone for such ambiguity was laid by the plaintiff so she cannot now complain of a result which could have been anticipated and of which she was cautioned.

The plaintiff in her brief acknowledges that the more serious question surrounding the interrogatory is that it fails to limit the inquiry to before and at the time of the occurrence. In an action for personal injuries, being the case of *Chase v. Morgan Cab Co.*, 2 Ill.App.3d 203, 276 N.E.2d 393, the trial court approved the following special interrogatory:

> "Do you find from consideration of all the evidence and under the instructions of the court that the plaintiff was guilty of contributory negligence which proximately contributed to cause his alleged injury?".

This special interrogatory is almost identical with the one which we are now considering in the instant case. In *Chase* the reviewing court made the following observation:

> "Plaintiff counters, however, with the proposition that the form of the special interrogatory was vague, ambiguous and confusing, and therefore should have been ignored in any event. While the interrogatory did not contain a clause limiting its concern to the time 'at and immediately prior to the occurrence,' we believe that this did not, under the circumstances, lead to any confusion as to the period contemplated. Nor do we find any merit in plaintiff's argument that the term, 'contributory negligence,' and the clause, 'proximately contributed to cause,' were productive of confusion in the minds of the jurors * * *." *Chase v. Morgan Cab Co.*, 2 Ill. App.3d 203, 276 N.E.2d 393.

We subscribe to the reviewing court's observation in *Chase* and therefore do not find that the special interrogatory complained of was in such an improper form as to constitute reversible error.

The plaintiff further argues that the jury's answer to the special interrogatory and the general verdict itself was against the manifest weight of the evidence. Throughout this opinion we have recited the facts which resulted in this lawsuit as we deemed them pertinent to the issues with the exception of the material contained in the record relating to the defendant's action and conduct after the collision. Since this material is related to the plaintiff's theory that a common law action for negligence can be maintained for violation of the statute (Ill. Rev. Stat. 1969, ch. 95½, sec. 135), which requires one to render assistance after an accident, we will now recount from the record of defendant's actions at such time.

After the collision the pick up truck driven by the decedent was located in a ditch approximately eight feet in depth. The top of the truck cab was close to ground level. Immediately after the collision the defendant went to the ditch and being unable to see anyone in the truck and thus obviously being unaware as to the extent or nature of any injuries suffered by its occupant, she made inquiry as to whether anyone was hurt. The

truck's occupant replied that he was injured and was informed by the defendant not to move and that she would seek help. The defendant then ran for approximately one-half mile to a residence where arrangements were made for an ambulance.

The decedent's death resulted from uncontrolled bleeding and it is plaintiff's contention that application of pressure would have prevented the flow of blood and that the defendant is negligent for not having performed such first aid treatment. The defendant was not possessed of any special knowledge or training in regard to medical assistance or first aid training.

If the mere application of pressure would have prevented the death of plaintiff's decedent then the lack of such treatment is indeed a grievious circumstance. However, had the defendant clambered into the ditch, located the wound, and attempted to administer first aid but to no avail, could not the plaintiff equally argue that the defendant was negligent in not seeking trained assistance? In making this observation we are indulging in conjecture but the plaintiff's theory that the defendant is negligent in that she violated the "rendering aid" statute (Ill. Rev. Stat. 1969, ch. 95½, sec. 135) is a novel theory. We need not determine whether its violation under any set of facts could be the basis for an action in negligence for suffice to say the jury rightfully found in the case before us that the defendant was not guilty of its violation.

■■ We do not find the answer to the special interrogatory and the general verdict of the jury to be against the manifest weight of the evidence. Questions of negligence or contributory negligence are ordinarily for the jury to decide. (*Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74.) We need not again reconstruct the facts and make an analyzation of them for in the light of them the jury's verdict was not so palpably erroneous and unwarranted as to necessitate its citiation. The observation that we made in the recent case of *Rhodes v. Oliva* ante, p. 849, is applicable to the present one when we stated:

> "As we have frequently observed, the test is not whether this court, if it were a trier of fact in the case, would have reached a different conclusion than that of the jury. This court is governed solely by an examination of the record and does not have the opportunity to see and hear the witnesses in the case. As stated in *Schneiderman v. Interstate Transit Lines, Inc.*, 331 Ill.App. 143, 147, 72 N.E.2d 705:
>
>> 'There are many things which a jury observes on the trial * * * that do not appear from the printed record—the appearance of the respective witnesses, their manner of testifying and a great

many other circumstances. They are in a much better position * * * to determine the truth of the matter in controversy than a court of review. '(See also: *Mirich v. T. J. Forschner Contracting Co.,* 312 Ill. 343, 358, 143 N.E. 846; *Kotiulla v. Great Lakes Terminal & Transport Corp.,* 101 Ill.App.2d 457, 463, 243 N.E.2d 461, 464).

As we have indicated in many cases, this court is not authorized to substitute its judgment for that of the triers of fact if there is sufficient evidence in the record to support the jury's determination. Since we find that to be the case in the cause before us, the determination of the jury will not be set aside."

For the reasons set forth the judgment of the circuit court of Kankakee County is affirmed.

Judgment affirmed.

ALLOY, P. J., and DIXON, J., concur.