SHEILA GASBARRA, Adm'r of the Estate of Christine Gasbarra, Deceased, Plaintiff-Appellant, v. ST. JAMES HOSPITAL, Defendant-Appellee.

First District (5th Division)   No. 78-1501

Opinion filed December 7, 1979.—Supplemental opinion filed on denial of rehearing June 20, 1980.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, and Terrence M. Johnson, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a judgment entered on a verdict in favor of defendant in a malpractice action which sought damages for the death of plaintiff's 14-month-old daughter (hereafter decedent). A special interrogatory as to whether the doctors who treated decedent were independent contractors was answered affirmatively.

From the testimony of plaintiff, it appears that she brought decedent to the emergency room of defendant on four occasions—the first of which was May 24, 1972, when she was examined by Dr. James Greene, who gave plaintiff instructions for the child's care at home and prescribed medicines for her condition, which he diagnosed as measles. When the child did not improve, plaintiff brought her back the next day and she was examined by another emergency room physician who told plaintiff to continue her home care in accordance with Dr. Greene's previous instructions. The following day, plaintiff again returned with the child to the emergency room, where she was examined and treated by still another doctor who, according to plaintiff, said that the child could not be admitted to the hospital because it did not have a contagious disease ward. The next day, when the child's condition worsened, plaintiff states that she called the emergency room and the woman who answered the phone told her to continue with the home treatment. Later that same day, the child suffered convulsions and was brought to the emergency room where she was treated. That evening, she was admitted as a patient to the hospital, where she was examined by a Dr. Braun, who prescribed certain medication and did a minor surgical procedure to provide for intravenous medication. The hospital record does not indicate that any of the prescribed medication was given her until about two hours after it was ordered. Dr. Braun, however, testified he ordered the prescribed medication after decedent had already been given other medication. The child's condition worsened, and she died the next day.

Two expert witnesses testified concerning the treatment rendered decedent. Dr. Feldstein, for plaintiff, stated in substance that the treatment rendered by the emergency room doctors and nurses during her third and fourth visits did not conform to the standards of medical practice prevailing in the area at that time. Specifically, Dr. Feldstein took the position that decedent should have been admitted to the hospital upon her third visit, because of her symptoms at that time. In addition, he said that the performance of the hospital nursing personnel was in violation of acceptable nursing standards—particularly in the alleged delay in administering the medicine ordered by Dr. Braun in the hospital. Dr. Feldstein concluded that the deviation from proper standards of medical care might or could have caused the death of decedent. Dr. Allen,

testifying as an expert witness for defendant, disagreed with the conclusions of Dr. Feldstein. In substance, he stated that the care rendered by the physicians in the emergency room complied with the required standard and that he had no criticism of the care given by the nursing staff either in the emergency room or in the hospital—all of which he stated was also within required standards.

It is undisputed that prior to the events involved in the alleged malpractice, defendant had operated the emergency room in its hospital, but that on March 1, 1972, the Doctors Emergency Care Association (DECA), a professional corporation, entered into a written agreement with defendant to manage its emergency department. The agreement generally required that DECA was to provide continuous physicians' services to any ill or injured persons coming or brought to the emergency room; and that defendant was to furnish all other personnel, as well as supplies, space and equipment necessary for the operation of the emergency department.

During her visits to the emergency room decedent was treated by DECA physicians, but neither DECA nor the physicians have been named as defendants in this action, so that on the malpractice aspect of her action, it was necessary for plaintiff not only to establish that the DECA physicians did not exercise the required standard of medical care but also that DECA, in the treatment of decedent by its physicians, was the agent of defendant. The evidence and the content of the agreement between DECA and defendant will be set forth in greater detail in our discussion of specific issues.

Plaintiff makes numerous allegations of error and, to facilitate their consideration, we have grouped them into the following contentions: (1) that the trial court erred in denying her motions for directed verdict and judgment notwithstanding the verdict; (2) that the special interrogatory should not have been submitted to the jury and, in any event, that the answer to the interrogatory finding DECA to be an independent contractor was against the manifest weight of the evidence; (3) that there were erroneous rulings on instructions; and (4) that the trial court improperly refused an adverse examination of Dr. Greene.

OPINION

Considering the first contention, we note that the trial court denied motions by plaintiff for directed verdict at the close of all the evidence. The grounds therefor, as stated in plaintiff's written motion, were two-fold; namely, that DECA "was agent of St. James Hospital" and that DECA "was guilty of malpractice as a matter of law." In her briefs in this court, however, plaintiff makes no attempt to negate a factual question on the malpractice issue. She assumes that the court denied the motions for

directed verdict solely on the basis that there was a question of fact as to whether DECA was agent of defendant or an independent contractor. This assumption finds no support in the record, however, and we believe that it was quite possible and, indeed, probable that the court denied the motions for directed verdict because there was a question of fact as to malpractice.

■■■ Initially, we note that a verdict ought to be directed and judgment *n.o.v.* entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) In a medical malpractice action, plaintiff must establish the standards of care against which defendant's conduct is measured and must then prove that, judged in the light of these standards, the defendant was unskilled or negligent and that his want of skill or care caused the injury to plaintiff. (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301; see Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971) (hereinafter cited as IPI Civil).) "Generally, expert testimony is needed to support a charge of malpractice because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of physician." (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256, 381 N.E.2d 279, 282.) There are, however, situations where a physician's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it, in which event expert testimony may not be necessary. *Walski v. Tiesenga.*

■■ In the instant case, plaintiff recognized the factual situation to be one requiring the need of expert testimony, and she does not now contend to the contrary. Her expert medical witness testified to a lack of the required standard of care in the treatment of decedent by DECA personnel and also of the hospital nurses because of their alleged delay in administering the medication prescribed by Dr. Braun at the hospital. Defendant's expert medical witness, however, testified that the care and treatment by DECA physicians and the care provided in both the emergency room and the hospital were within the standards required. Furthermore, as to the alleged medication delay in the hospital, we note Dr. Braun's testimony that he examined decedent at the hospital and ordered medication sometime between 9:45 and 10:30 p.m., while the hospital records show that no medication was given until midnight. Dr. Braun testified, however, that he ordered the prescribed medication after decedent had been given some medication. In the light of the totality of this testimony, it appears clear to us that questions of fact existed as to whether the treatment of decedent was within required standards, and we find that on

that basis the trial court properly denied the motion for directed verdict.[1]

Further, plaintiff's motion for judgment notwithstanding the verdict was grounded solely on the failure of the trial court to find that DECA was the agent of defendant in its care of decedent. Having found above that questions of fact existed and, on that basis that the trial court properly denied the motions for a directed verdict, we apply the same reasoning as to the motion for judgment notwithstanding the verdict and we conclude that it also was properly denied.

Turning to the second contention of error, which concerns the special interrogatory, plaintiff posits that it should not have been submitted to the jury and that, in any event, the finding that DECA was an independent contractor was against the manifest weight of the evidence, requiring a new trial.

■ Special interrogatories must be tendered, objected to, ruled upon, and submitted to the jury in the same manner as instructions (Ill. Rev. Stat. 1977, ch. 110, par. 65), and it is well settled that to preserve an objection to an instruction or special interrogatory upon review, the grounds for the objection must have been specifically raised in the trial court so that it could be advised of the specific nature of the objection before ruling thereon. Supreme Court Rule 239(b), Ill. Rev. Stat. 1977, ch. 110A, par. 239(b); *Delany v. Badame* (1971), 49 Ill. 2d 168, 274 N.E.2d 353; *O'Neill v. Montalbano* (1972), 3 Ill. App. 3d 414, 279 N.E.2d 467.

Initially, we note in the instant case that the special interrogatory was presented by defendant during an instruction conference which does not appear in the record. At a subsequent in-chambers discussion, the court stated:

> "Let the record reflect that there has been an instruction conference and I am going to set forth the results of the instruction conference and the attorneys for either side can interject at any time with any legal position succinctly that they may have."

Thereafter, the only reference to the special interrogatory appears as follows:

> "THE COURT: Interrogatory given over objection.
>
> MR. LESAK [plaintiff's attorney]: Your Honor, again I would like to point out that this interrogatory does not encompass—The total question is dispositive to all the issues. The jury may find there was malpractice by the nurse in the failure to give the medication

---

[1] In view of this holding, it will not be necessary to consider plaintiff's additional grounds in support of her motion for directed verdict; namely, that DECA was the agent of defendant as a matter of law or that defendant was estopped from denying agency. It should be noted, however, that in the trial court plaintiff argued those grounds only in support of her motion to direct. She did not at any time, either in writing or orally, move for rulings concerning those grounds nor does the record disclose that the trial court ever made such rulings.

pursuant to the order of Dr. Braun. If a general verdict is given and this interrogatory is marked "Yes," we will never know whether or not the jury has determined that the nurse was negligent nor will we know whether or not they determined that the Doctors Emergency Care Association was an agent of the defendant hospital. I would suggest that the Court permit an instruction—an interrogatory given to the jury in the same form except that it would be relative to agency because that would be dispositive of the case if they gave a general verdict."

Thereafter, the following colloquy appears:

"[THE COURT] Is this a correct recitation of our conversation, counsel?

MR. TOBIN [defendant's attorney]: Correct.

THE COURT: Mr. Lesak?

MR. LESAK: Yes, I guess it is other than when we come back with these other ones that he is going to bring."

Because the initial conference has not been recorded, we are not informed as to the basis of plaintiff's objection to the interrogatory other than the court's statement above, from which it appears to be the sole contention of plaintiff that the interrogatory should not have been submitted because it would not control the general verdict. We note also that the post-trial motion with respect to the special interrogatory states only "that the court erred in instructing the jurors by presenting them with Defendant's interrogatory * * *."

■■ Thus, while defendant asserts additional grounds in his brief, we are limited on review as to what was presented to the trial court; namely, that the interrogatory should not have been submitted because it would not control the general verdict. Supreme Court Rule 239(b); *Delany v. Badame.*

■■ For a special interrogatory to be proper, an answer responsive thereto must be inconsistent with some general verdict that might be returned. (*Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52.) Its function is to require the jury's determination as to one or more specific issues of ultimate fact and operates as a check upon the deliberations of the jury (*Sommese v. Maling Bros.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468), and a special interrogatory asking for a finding as to a mere evidentiary fact is always improper (*Ellerman v. Clark Products, Inc.* (1978), 67 Ill. App. 3d 848, 384 N.E.2d 940). In the instant case, it is our belief that the special interrogatory was not inconsistent with some general verdict that might be returned and should not have been given. Whether the interrogatory was answered affirmatively or negatively, it would not have been inconsistent with any general verdict here, as

plaintiff's action was based on the alleged malpractice of defendant's agent, DECA, and the separate liability of the hospital because of alleged failures on the part of nursing personnel.

However, the fact that the interrogatory should not have been submitted is not in itself reversible error. It must appear from the record that prejudice was caused to plaintiff. Here, she alleges only that, because the interrogatory was given, the jury must have been influenced by it in finding against her. See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697; *Tipsword v. Melrose* (1973), 13 Ill. App. 3d 1009, 301 N.E.2d 614.

In *Bruske*, an interrogatory was given in a negligence action asking whether plaintiff was in the exercise of ordinary care for his safety before and at the time of the occurrence. Consistent with its general verdict, the jury answered negatively. The court stated it should not have been given because it failed to include the additional element of whether plaintiff's negligence proximately contributed to his injuries. The court went on to state:

> "We do not, however, regard such defect as reversible error. The jury was fully and adequately instructed on the law concerning contributory negligence, including the requirement of proximate cause. While not a complete cure for the faulty interrogatory, when these instructions are viewed together with the evidence in the case, there is little indication that the jury was confused by the interrogatory to the detriment of the plaintiff." (44 Ill. 2d 132, 136-37, 254 N.E.2d 453, 456.)

In the instant case, plaintiff proceeded on the basis of separate theories of recovery—(1) that defendant, as principal of DECA, was liable for DECA's failure to exercise the proper standard of care; and (2) that defendant was liable because of the failure of the nurses to exercise proper care—particularly because of their delay in giving medication prescribed by Dr. Braun. Plaintiff submitted issue and burden-of-proof instructions and argued both theories of recovery in opposition to defendant's motion for directed verdict and in her closing arguments. Her contention that the jury must have been influenced by the special interrogatory is purely speculative, and we are of the belief (as was the court in *Bruske*) that the instructions, viewed together with the evidence in this case, give little indication, as plaintiff suggests here, that the jury was confused by the interrogatory to the detriment of plaintiff. In view of this holding, it will not be necessary to consider plaintiff's alternative position—that the special interrogatory finding was against the manifest weight of the evidence.

Plaintiff also contends that the court committed reversible error in

overruling her objections to defendant's Instructions 6 (IPI Civil No. 10.01) and 7 (IPI Civil No. 10.02), respectively, which are definitions of negligence and ordinary care.

■■ She argues that these instructions were improperly given because they did not set forth the proper standard of medical care required of physicians. As noted above, plaintiff proceeded on separate theories. In her issue and burden of proof instructions, as well as in a number of others, plaintiff uses the words "negligent" and "negligence." So also, the term "ordinary care" is used in defendant's instructions concerning the standard of care owed by deceased's parents. Under these circumstances, the definitions of negligence and ordinary care were properly given and, in any event, we see no prejudice to plaintiff inasmuch as the jury was also properly instructed on the standard of medical care required. Plaintiff's Instructon 27 (IPI Civil No. 105.01).

Plaintiff also urges that the trial court erred in not giving three instructions she proposed. The first of these, her Instruction 8 (IPI Civil No. 5.01), speaks to the inference that may be drawn from the failure of a party to offer evidence within his control. Plaintiff argues that the instruction should have been given because defendant failed to produce certain tax returns concerning payments made to DECA.

■■ To justify the giving of an instruction, the record must contain some evidence of the theory set forth in the instruction. (*Yakstis v. William J. Diestelhorst Co.* (1978), 61 Ill. App. 3d 833, 378 N.E.2d 591; *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624.) In the instant case, the only testimony concerning the content of the refused instruction was from Frank Smith, assistant controller of defendant, who stated that no such forms were in existence as they were not required by Internal Revenue Service. In view of this uncontroverted testimony, we find that the court properly refused plaintiff's instruction.

Plaintiff also asserts error in the refusal of her Instructions 25 and 26, which were submitted using IPI Civil No. 60.01. The statute in general requires that every hospital having general medical and surgical services shall provide a hospital emergency service in accordance with the rules and regulations adopted by the Department of Public Health. Instruction 25 set forth the statute and then went on to state that if the jury found that a party violated the statute, it could consider such violation with all other evidence in determining whether that party was negligent. Instruction 26 contained Instruction 25 in its entirety, and then continued with a statement that if the jury found that negligence of defendant was a proximate cause of injury, it was not a defense that some third party may have violated the statute.

Plaintiff maintains the statute is intended to protect against the injury incurred by decedent and that she was within the protected class.

Furthermore, she points out that her complaint alleges that the death of decedent "was caused by defendant's failure to provide her with proper emergency service, as was required by the statute." We note, however, that emergency room service was provided decedent. At issue here was the quality of the service rendered and, in this regard, we note that the statute requires emergency service in accordance with the rules and regulations adopted by the Department of Public Health. Plaintiff does not direct us to any portion of the record from which it could be inferred that the emergency room was not operated in accordance with those rules and regulations. We also find no evidence in the record to support the theory expressed in Instructions 25 and 26, and we conclude that they were properly refused. See *Yakstis v. William J. Diestelhorst Co.*; *Figarelli v. Ihde.*

We reach, then, the contention of plaintiff that the refusal to allow her to cross-examine Dr. Greene was reversible error. Section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) provides in pertinent part that at the trial of any case an adverse party may examine as if under cross-examination, "any party thereto or any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action."

DECA managed the operating room under an agreement with defendant, and Dr. Greene was president of DECA. Plaintiff argues that the DECA physicians, including Dr. Greene, were the actual or apparent agents of defendant and thus that Dr. Greene was its "managing agent." It is clear, however, that neither Dr. Greene nor DECA were named as defendants, and plaintiff does not argue that Dr. Greene was a person for whose immediate benefit the action was defended. Furthermore, plaintiff makes no assertion that Dr. Greene was an officer, director, or foreman of defendant, and we reject her argument that he was a managing agent as that term is used in section 60. When Dr. Greene was called to testify and plaintiff made the request that she be allowed to cross-examine him under section 60, there was no evidence in the record as to the legal relationship existing between DECA and defendant. Plaintiff was the first witness to testify and she gave no testimony concerning that relationship. Dr. Greene was the next witness to take the stand and, at that time, the agreement had not yet been received in evidence. Thus, at that time there was no basis upon which the court could have declared him to be a managing agent and neither, from our examination of the record, does there appear any basis in his testimony upon which cross-examination should have been allowed either under section 60 or as a hostile witness.

Moreover, plaintiff does not assert, nor do we find in the record, that she was prejudiced by the refusal to allow the section 60 examination. While her questioning of Dr. Greene encompassed the greater portion of

his 186 pages of testimony, she neither points out, nor are we able to find, any relevant matter she was not able to bring forth, nor does she indicate what additional information she might have been able to evoke if cross-examination had been allowed. To the contrary, it appears that the trial court was very liberal in permitting leading questions to enable plaintiff to bring forth all possible information.

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.


SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff states in her petition for rehearing that this court misunderstood "the nature of the plaintiff's motion for a directed verdict" in that, contrary to our view that the motion was for a directed verdict only as to liability, she states that it "was also for a directed verdict ('ruling') on various issues including the defendant's relationship with DECA."

While there may have been a hearing on her motion for a directed verdict, the record is silent as to what occurred. In fact, the only reference to such a motion appears in the following colloquy:

"MR. LESZAK [plaintiff's counsel]: Your Honor, with regard to the plaintiff's Motion for a Directed Verdict on the same basis, should I argue that motion? I think the court heard the arguments that were made and the law that I have given you in regard to the employment relationship, the partnership or joint relationship between the hospital and the Doctors Emergency Care Association and its employees.

THE COURT: The motion will be denied."

Neither the agreements mentioned nor the law which counsel said was presented are in the record, and it is unclear from the above comments as to what was included in the motion for directed verdict. It is clear, however, that counsel referred to "a motion" rather than a number of motions and that the court also considered it as "a motion" in its ruling. Furthermore, plaintiff's notice of appeal is from "the order denying the plaintiff's motion for a directed verdict during the course of the trial." It is indicated that the notice of appeal could only refer to the ruling in the colloquy set forth above denying plaintiff's motion for a directed verdict. It thus appears that the trial court considered the motion to direct as

applying to liability only and denied it because there was a factual issue as to malpractice, and we took the same view as to the motion.

Plaintiff, nevertheless, maintains the motion sought a directed verdict as to each of the issues stated in it and that the denial of the motion in effect was a refusal to direct all of them, and she argues the denial as to the agency issue was improper. In this regard, however, we note nothing in the record indicating that plaintiff requested a specific direction as to agency or as to any other of those issues, and no order was entered denying a motion to direct as to any of them. In view thereof, we adhere to the conclusion in our opinion that the trial court properly denied plaintiff's motion for directed verdict.

Even if we were to accept plaintiff's position that the court's order included the denial of a directed verdict as to agency, we believe it was proper.

It is well established that a verdict ought to be directed only where the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), and that a principal is liable for the acts of an agent but not for the acts of an independent contractor (*Yuhas v. Allis-Chalmers Distribution Service Corp.* (1973), 12 Ill. App. 3d 814, 299 N.E.2d 166). Unless the relationship is so clear as to be undisputed, the issue of whether one is an agent or independent contractor is a question of fact (*Blake v. Dickinson* (1975), 31 Ill. App. 3d 379, 332 N.E.2d 575), and the right to control the manner in which the work is to be performed is the predominant factor in determining whether a principal-agency relationship exists (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 323 N.E.2d 521), the resolution of which depends upon the particular circumstances of each case (*Yuhas v. Allis-Chalmers Distribution Corp.*).

On the question of agency here, the record discloses that prior to March 1, 1972, defendant managed the emergency department of its hospital but it had entered into an agreement whereby DECA undertook the management on that date. Defendant continued to provide, as it had before March 1, 1972, all emergency room facilities, operations, nurses, aides and orderlies, as well as the forms and papers used by the department. When decedent was first brought to the hospital emergency room by plaintiff on May 24, 1972, she came under the care of DECA physicians and continued under their care on her subsequent visits, but plaintiff was not informed at any time that DECA rather than the hospital managed and operated the emergency room. All the billings for the care of decedent were prepared and sent to plaintiff by defendant, and a form initially signed by plaintiff gave consent to the hospital for such treatment

of decedent as was believed necessary in the judgment of the attending or emergency room physicians. The name of DECA did not appear on any of the bills or consent forms.

It appears that, under its agreement with defendant, DECA was to provide continuous and uninterrupted medical services in the emergency department, to employ physicians to perform those services, to be responsible for the professional supervision, direction and operation of the department, and to assume responsibility for the nature and quality of the medical services rendered patients entering the emergency room.

Plaintiff points out, however, that the agreement also provides that DECA physicians "are to be of a superior quality consistent with the requirements of the hospital" and that their responsibility was to be "in accordance with the standards established therefor by the administration of the hospital." Thus, she argues, "[i]t is clear that DECA was the agent of the Hospital because it was contractually bound to obey the rules promulgated by the Hospital." In opposition thereto, defendant refers to the testimony of Dr. Greene (president of DECA), that all the physicians in the emergency department were employed by DECA; that they were totally and solely in charge of whatever medication and treatment to be given; and that the hospital could not tell DECA to treat a patient differently. In addition, a member of the hospital staff testified that DECA promulgated its own regulations and procedures for the emergency department and that they preempted the hospital regulations.

■■ Considering the totality of the circumstances, we cannot say that an agency relationship was so clear as to be undisputed (*cf. Yuhas v. Allis-Chalmers Distribution Service Corp.*), and we conclude that a factual question existed as to agency.

The cases cited by plaintiff are not persuasive. In *Mduba v. Benedictine Hospital* (1976), 52 App. Div. 2d 450, 384 N.Y.S.2d 527, the trial court dismissed an action against a hospital on the basis that a physician operating its emergency room under a contract was an independent contractor. The reviewing court reversed because there was no question that the physician was under control of the hospital. Here, of course, we have found there was a factual question as to control. So also, in *Nordland v. Poor Sisters of St. Francis Seraph of Perpetual Devotion* (1954), 4 Ill. App. 2d 48, 123 N.E.2d 121, and *Komel v. Commonwealth Edison Co.* (1977), 56 Ill. App. 3d 967, 372 N.E.2d 842, the pertinent facts as to control were so clear as to be undisputed, which is not the case here.

We see no merit in plaintiff's further contention that, under the facts presented, a verdict should have been directed as to agency on the basis of estoppel. As stated in *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 210, 309 N.E.2d 632, 639:

" 'Equitable estoppel may be defined as the effect of the voluntary

conduct of a party whereby he (or she) is absolutely precluded from asserting rights which might otherwise have existed as against another person who has, in good faith, *relied upon such conduct and has been led thereby to change his position for the worse,* and who on his part acquired some corresponding rights.' *Slavis v. Slavis,* 12 Ill. App. 3d 467, 473, 299 N.E.2d 413, 417." (Emphasis added.)

See also *Dill v. Widman* (1952), 413 Ill. 448, 109 N.E.2d 765; *Hartford Accident & Indemnity Co. v. D. F. Bast, Inc.* (1977), 56 Ill. App. 3d 960, 372 N.E.2d 829; 18 Ill. L. & Prac. *Estoppel* §22 (1956).

Estoppel must be proved by clear and unequivocal evidence (*Slavis v. Slavis*) and, before the doctrine may be applied, there must have been reliance in good faith upon the conduct of another which leads a person to change his or her position for the worse (*Hartford Accident & Indemnity Co. v. D. F. Bast, Inc.; Atwater v. Atwater*). As stated in 18 Ill. L. & Prac. *Estoppel* §23 (1956):

"Since the doctrine of estoppel is invoked to prevent injustice or a fraudulent result, there can be no estoppel where * * * the person claiming equitable estoppel has not been induced to alter his position in such a way that he will be injured if the other person is not held to the representation. It is not necessary, however, that actual malice motivate the representations or conduct which have been acted on to work an estoppel, so long as there is a change in position by the adverse party to his detriment."

In the instant case, although plaintiff did not specifically testify to any reliance on the conduct of defendant, we believe, as plaintiff argues, that the facts lead readily to the assumption of such reliance. She does not, however, point to any change of position induced by reason of any conduct or silence of defendant. She brought decedent to the hospital for medical care which she received, albeit allegedly improper. She does not contend, and it does not appear, that she would have taken any other action had she been informed that the emergency room doctors were not employees of the hospital, and we find nothing in the record from which a conclusion could be made.

We find that the record discloses no change of position by plaintiff for the worse and, accordingly, we hold that the doctrine of equitable estoppel is not applicable.

For the reasons stated, the petition for rehearing is denied.

MEJDA and WILSON, JJ., concur.