*In re* ANTHONY WELLINGTON.—(THE PEOPLE *ex rel.* ANNA M. WELLING-TON, Petitioner-Appellee, *v.* ANTHONY C. WELLINGTON, Respondent-Appellant.)

(No. 61572; ▮▮▮▮▮▮▮▮)

First District (2nd Division)—December 2, 1975.

John J. Posch and Edward B. Beis, both of Legal Assistance Foundation, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Robert Cahill, and Harry S. Siegel, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from an order that committed respondent Anthony C. Wellington to the Department of Mental Health for hospitalization as a person in need of mental treatment.[1] In this appeal, the only issue is whether it was reversible error for the trial court to overrule objections and permit a psychologist to testify as an expert witness and give his opinion concerning respondent's mental condition. The parties are in agreement concerning the material facts.

Early in September 1974, respondent's mother, Anna M. Wellington, filed a petition in which she sought his hospitalization because she believed he was in need of mental treatment. She supported her petition with the certificates of two licensed physicians who said that from personal examination of respondent, they were of the opinion that he needed mental treatment and required immediate emergency hospitalization because he was likely to physically harm himself or others. At respondent's request, the petition was heard by a jury.

In addition to the witness whose testimony gives rise to the issue in this appeal, five others gave testimony concerning respondent's conduct on the occasions in question, and about his mental condition, as this bore on whether he was in need of mental treatment. They were respondent, who was called as an adverse witness; a mental health technician and a mental health specialist, both on the staff of a mental health center; a licensed Illinois physician, a psychiatrist, who told the jury of the examinations he had made and of his diagnosis that respondent was mentally ill and should be hospitalized; and respondent's mother who explained to the jury the circumstances that led her to file the hospitalization petition.

The witness in question preceded the psychiatrist and testified that he was a mental health specialist and worked as a "ward psychologist" in the center to which respondent had been taken. The psychologist said he had a bachelor's degree from St. Thomas College, forty hours of

---

[1] It is provided in the Mental Health Code of 1967, as amended, that "[i]f any person is finally found to be in need of mental treatment or mentally retarded, the court, as part of the hearing shall consider the alternative forms of care or treatment which are desirable for and available to the patient, including but not limited to hospitalization. If the court orders that the patient be hospitalized in a facility of the Department, then the Department shall designate the Department facility in which such person shall receive treatment. * * *" Ill. Rev. Stat. 1973, ch. 91½, par. 9—6.

graduate work at DePaul University in clinical and experimental psychology, and five hours of direct supervision at the University of Chicago by the head of that institution's child psychology unit. For approximately seven years, during which he had contact with approximately 1000 patients, he had been employed by the Illinois Department of Mental Health. He told the jury that two weeks before his testimony, and for about five or six hours, he interviewed respondent and gave him psychological tests. He described the conversation they had and offered his view that the conduct which caused others to become apprehensive about respondent was "rather dangerous." However, he said respondent told him that he felt compelled to behave that way.[2] Then, the psychologist was allowed to testify that "I felt the man was delusional. I felt he had false ideas, and being the kind of person he was, because he was responding to the delusions rather than to reality, he was dangerous, and that sort of process, in my opinion, was a schizophrenic process." This testimony was given over the objection that the witness was not qualified. The objection was reasserted in a motion for mistrial which was denied with the ruling that the psychologist had worked in the field of mental health "* * * and was expert enough to offer an opinion * * *." In this appeal, it is argued that respondent was prejudiced by the ruling; therefore, the trial court committed reversible error when it overruled the objection.

The question whether a nonmedical psychologist is qualified to give expert testimony of the issue of mental condition or competency has not received uniform treatment in the courts of this country. Some have left the question to the discretion of trial judges. (See *People v. Hawthorne* (1940), 293 Mich. 15, 291 N.W. 205 (Butzel, J., concurring).) Others have fashioned guidelines, borrowing in some instances from standards of the American Psychological Association, but have left application of these guidelines to ad hoc decisions in the trial courts. (See *State v. Padilla* (1959), 66 N.M. 289, 347 P.2d 312; *Jenkins v. United States* (D.C. Cir. 1962), 307 F.2d 637.) Understandably, questions concerning the qualifications of a nonmedical psychologist to give expert testimony have arisen most often in criminal cases. (See Annot., 78 A.L.R. 2d 919 (1961).) But in all cases, civil or criminal, the determinative question is whether the nonmedical psychologist who is allowed to give his opin-

---

[2] The conduct to which the psychologist was referring consisted of three instances, none witnessed by him. Two of these were assaults with a rifle that respondent committed on a man in the neighborhood of his home, the second incident being the one that prompted his mother to seek his hospitalization. The other instance was a battery that respondent inflicted on a fellow patient while he was awaiting hearing of the petition for his commitment.

ion concerning the mental condition or competency of a person qualifies as an expert witness. 31 Am.Jur.2d *Expert and Opinion Evidence* § 87 (1967).

In this State, the best guide to the answer is *People v. Noble*, 42 Ill.2d 425, 248 N.E.2d 96. There, a defendant charged with murder interposed the defense of insanity. He employed a psychiatrist who in turn employed a psychologist to administer certain psychological tests. The psychologist was to evaluate the tests and report to the psychiatrist. The psychologist's qualifications included a bachelor's and master's degree and a doctorate in psychology. His post-doctoral experience included a one-year internship in psychology, and three years at the University of Michigan where he taught clinical psychology and related subjects. Later, he was a professor of psychology at the University of Illinois and a member of that school's department of psychiatry. After that, he became a registered psychologist under Illinois law. At defendant's trial, the psychologist was not permitted to testify concerning the tests he made, his evaluations of them, and the report he gave the psychiatrist. The Supreme Court held that exclusion of this testimony was error.

It is important to bear in mind that in so holding, the court in *Noble* did not state the minimum qualifications a psychologist must possess before he can testify as an expert witness. However, equally important is the absence from the court's words of any suggestion that where the issue of mental condition is involved, a psychologist less qualified than the one in *Noble* is competent to give opinion testimony. Indeed, a dictum that refers to the recognition of psychology's contribution to the understanding of human behavior calls our attention to the fact that to acquire a certificate of registration in this State, a psychologist must have, among other requirements, a doctoral degree in psychology, plus two years of professional experience.[3]

■■ In this case, the qualifications of the psychologist were appreciably less than those of the one in *Noble*. Plainly, he did not meet the requirements for an Illinois psychologist's certificate of registration. This reminds us that we have not found nor have we been directed to a case, either in this or in another jurisdiction, where, over objection, a psy-

---

[3] The Psychologist Registration Act provides, in relevant part, that a certificate of registration shall be issued to any person who "* * * (d) Has received a doctoral degree in psychology from a college, university, or other institution approved by the Department; (e) Has had at least 2 years of satisfactory professional experience; * * *." Ill. Rev. Stat. 1973, ch. 91½, par. 410(d)(e).

It is worthy of note, we believe, that in the 1968 amendment to the Mental Health Code, in the sections defining terms, it was provided that "'Psychologist,' means any person who is certified as a psychologist under the Psychologist Registration Act." Ill. Rev. Stat. 1973, ch. 91½, par. 1—16.

chologist with the qualifications of the one here involved was permitted to give testimony as an expert witness. (See *People v. Pennington* (1967), 66 Cal.2d 508, 426 P.2d 942, 58 Cal.Rptr. 374; *Hogan v. State* (Tex. Crim. App. 1973), 496 S.W.2d 594; Annot., 78 A.L.R.2d 919 (1961).) Certainly, this psychologist should not have been allowed to tell the jury that he believed respondent was "delusional," that his conduct was "dangerous" and that he was a person who was subject to a "* * * schizophrenic process * * *." (*People v. Felton*, 26 Ill.App. 3d 395, 325 N.E.2d 400; *People v. Myers*, 35 Ill.2d 311, 220 N.E.2d 297; *People v. Miller*, 33 Ill.2d 439, 211 N.E.2d 708.) It was not claimed the witness was going to testify from facts known to him personally. No foundation was laid for him to give nonexpert testimony. It was not claimed he was so acquainted with respondent's speech, manner, habits or conduct that he could qualify as a lay witness. (Compare *Neely v. Shephard*, 190 Ill. 637, 60 N.E. 922; *Britt v. Darnell*, 315 Ill. 385, 146 N.E. 510; 31. Am.Jur.2d *Expert and Opinion Testimony* § 88 (1967); Annot., 40 A.L.R.2d 15 (1955).) Therefore, we conclude that it was error for the trial court to overrule the objection to the psychologist's testimony and thus permit him to testify as an expert and give the jury his opinion concerning respondent's mental condition. The remaining question is whether this was reversible error.

Generally, error is not reversible without a showing of prejudice. (*Tipsword v. Melrose*, 13 Ill.App.3d 1009, 301 N.E.2d 614; *Adamaitis v. Hesser*, 56 Ill.App.2d 349, 206 N.E.2d 311.) To entitle a party to the reversal of a judgment, he must show error that has, or presumably has, worked him an injury. (*Oldershaw v. Knowles*, 101 Ill. 117; *O'Fallon Coal & Mining Co. v. Laquet*, 198 Ill. 125, 64 N.E. 767; compare *Atz v. Goss*, 21 Ill.App.3d 878, 316 N.E.2d 29.) However, error that permits an unqualified witness to testify before a jury is not prejudicial if there is sufficient and competent evidence to the same effect. (*Sullivan v. Fawver*, 58 Ill.App.2d 37, 206 N.E.2d 492.) So it has been held that testimony of an incompetent witness does not require a reversal where the testimony is only corroborative of matters proven by competent evidence. *Korelski v. Needham*, 77 Ill.App.2d 328, 222 N.E.2d 334; *Hastings v. Abernathy Taxi Association, Inc.*, 16 Ill.App.3d 671, 306 N.E.2d 408.

■■ These principles serve to focus our attention on the record before us. We see that the statute invoked by respondent's mother when she petitioned for his hospitalization defined a person in need of mental treatment as anyone "* * * afflicted with a mental disorder, not including a person who is mentally retarded, * * * if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to

intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs." (Ill. Rev. Stat. 1973, ch. 91½, par. 1—11.) The same statute provided that "[n]o person may be found to be in need of mental treatment unless at least one psychiatrist or physican who has personally examined the respondent so testifies in person at the hearing ＊ ＊ ＊." (Ill. Rev. Stat. 1973, ch. 91½, par. 9—4.) The burden of proving that a person needs mental treatment is on the State, a burden that has to be carried by clear and convincing evidence. (*People v. Sansone*, 18 Ill.App.3d 315, 309 N.E.2d 733.) In discharging this burden, the State has to prove more than that the person is suffering from a mental illness; it has to prove that he is expected to injure himself or others. *People v. Ralls*, 23 Ill.App.3d 96, 318 N.E.2d 703.

As to these essential facts, the jury heard five witnesses, in addition to the unqualified ward psychologist. Respondent, as an adverse witness, was questioned about two incidents in which, armed with a rifle, he assaulted a man. The rifle in question was semiautomatic and it was loaded at the time. He also was asked about an altercation he had with a fellow patient in the mental health center to which he had been taken. A mental health technician described to the jury how she saw respondent beat the patient, an elderly man who was then suffering from palsy. A mental health specialist, a social worker at the center, told the jury of the observations he made of respondent and his behavior. Then, a licensed physician, a psychiatrist whose academic and professional qualifications are not questioned, described three examinations he made of respondent in which he obtained from him information which showed he was abnormally preoccupied with violent conduct. From the examinations and information thus acquired, the physician came to the medical and psychiatric conclusion that respondent was mentally ill and in need of mental treatment.

■■ The evidence which the jury heard was not contradicted. It is true that respondent sought to explain his conduct. However, he did not deny he had behaved in the manner described; nor did he refute the professional conclusions of the psychiatrist. In this court, he has not shown us how he was prejudiced by the testimony of the psychologist. In view of the quantum of evidence in the record, we are not persuaded that any importance should be attached to the fact that the unqualified psychologist's testimony preceded that of the qualified psychiatrist. (Compare *Clifford v. Schaefer*, 105 Ill.App.2d 233, 245 N.E.2d 49; *Jaffe v. Chicago Warehouse Lumber Co.*, 4 Ill.App.2d 415, 124 N.E.2d 618.) We conclude that aside from the testimony of the psychologist, the evi-

dence heard by the jury adequately sustained the verdict on which the trial court entered its order for respondent's hospitalization. Although it was error to allow the psychologist to testify as an expert, respondent was not prejudiced. Consequently, the error committed was not reversible. The order is affirmed. See *Richichi v. City of Chicago*, 49 Ill.App.2d 320, 199 N.E.2d 652.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.