ABUNDIO SALDANA, Plaintiff-Appellant, *v.* WIRTZ CARTAGE CO. *et al.*, Defendants-Appellees.

First District (4th Division)    No. 62551

Opinion filed December 1, 1977.

Fred Lambruschi, of Chicago (Herbert P. Veldenz, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Wyatt Jacobs, Barry L. Kroll, and David A. Novoselsky, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

After a jury trial, a verdict was returned in favor of defendants, finding that they were not liable for personal injuries incurred by plaintiff when struck by a truck driven by defendant Fitzsimmons, an employee of defendant Wirtz Cartage Co. Judgment was entered on the verdict.

The pertinent evidence adduced at trial is as follows:

On the afternoon of November 14, 1970, plaintiff was employed by Allied Asphalt Paving Co. as a dumpman on a crew doing paving work on Landwehr Road in Northfield, Illinois. His duties as a dumpman involved a Barber-Green paving machine used for surfacing roads with asphalt. The machine has a limited capacity for carrying asphalt, and consequently needs frequent replenishment. Plaintiff's job was to guide trucks backing up to the Barber-Green, open the gate of the truck, signal the driver to raise the dump body so that all of the asphalt would be poured into the machine's hopper, and signal the truck driver to move out. Some drivers, after unloading, cause their trucks to jerk forward a few feet to insure that the tailgate of the truck is shut. Plaintiff also signed reports indicating that the truck had been unloaded.

Plaintiff signalled the truck driven by defendant Fitzsimmons to back up to the Barber-Green. He then obtained the trip ticket and opened the tailgate to unload the truck. Plaintiff then signalled Fitzsimmons, who was in the cab of the truck looking through the side view mirror, to raise the body of the truck. Plaintiff's normal position at this time is to stand near the machine and spread the asphalt evenly in the bed of the hopper. Another driver, Jack Moore, approached plaintiff in order to get his report signed. Plaintiff walked to a point near the front of the defendant's truck to meet Moore and sign his report. As plaintiff was signing the report, the truck moved and a tire struck plaintiff's left leg, causing him to fall down. Plaintiff's right foot was pinned by a tire of the truck. Moore immediately told Fitzsimmons to back up so that the truck tire would roll off of plaintiff's foot. After plaintiff had been injured, Fitzsimmons told plaintiff that he was sorry, and stated that he hadn't seen plaintiff. He told some people at the scene that he had emptied his truck and pulled ahead.

While plaintiff testified that he had not given any signal to move the truck, Fitzsimmons testified that he had received such a signal. Fitzsimmons further testified that his daily work routine requires that he check the daily report in the office at the defendant Wirtz Cartage yard to see where he is to go on a given day. On November 14, 1970, he reported

to the dispatcher at Allied Asphalt, who directed him to haul asphalt to the Landwehr Road site. He had been driving a truck to Landwehr Road, hauling asphalt, for several days prior to the occurrence. The procedure was that upon his arrival at the site Allied's job foreman directed him. No one from Allied accompanied him in the cab of the truck. Fitzsimmons had been hauling asphalt to the construction site all day, and had emptied his last load at about 2:30 p.m. when plaintiff was injured.

Further testimony was to the effect that Wirtz had no contact with its drivers during the course of the day unless a problem arose. Wirtz repairs and maintains the trucks and hires the drivers, pays the drivers weekly, and bills its customers a flat hourly rate for the truck and driver. If a driver became ill while working on a job, a replacement would be sent if available. If a driver was undesirable to a customer, that customer could only tell Wirtz not to send that driver again.

At the close of the evidence, plaintiff moved for a directed verdict, which was denied. At the conference on instructions, although no instructions pertaining to the "loaned servant" defense were submitted, defendant asked that two special interrogatories be given. The first interrogatory dealt with the question of contributory negligence. The second interrogatory asked:

> "Was the defendant, ROY FITZSIMMONS, at the time of the occurrence wholly subject to the control and direction of the ALLIED ASPHALT PAVING COMPANY and free during such time from the direction and control of Wirtz Cartage Company?"

Plaintiff objected to the jury being given this interrogatory. However, the trial court submitted both interrogatories to the jury. During closing argument, counsel for both sides argued the "loaned servant" defense. The jury returned a verdict for defendants, and answered in the negative as to whether plaintiff was contributorily negligent and affirmatively as to the special interrogatory concerning the issue of whether Fitzsimmons was a loaned servant.

OPINION

■■ Initially, plaintiff argues that the second special interrogatory, as given, was improper since it did not set forth all of the elements necessary to establish a valid defense under the "loaned servant" doctrine. In *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 123, 171 N.E.2d 63, 64, our supreme court discussed the doctrine:

> "[W]e recognize that the criteria reiterated in the Illinois case law for the existence of the master-servant relationship is the right to control, which includes the power of discharge. (*Harding v. St. Louis Nat. Stock Yards*, 242 Ill. 444; *Densby v. Bartlett*, 318 Ill. 616; *Connolly v. People's Gas Light & Coke Co.*, 260 Ill. 162; *Forest*

*Preserve Dist. v. Industrial Com.*, 357 Ill. 389.) We also recognize that where an employee is sent by his general employer to another for the performance of special work, the test whether he becomes the employee of the person to whom he is sent depends upon whether he becomes wholly subject to that person's control and freed during such time from the direction and control of his master. (*Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300.) This presents a question of fact for the jury, which must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner of direction of the services. *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300."

■■ While the factors enumerated in *Gundick* would properly be incorporated in a jury instruction, no such elaboration is needed in a special interrogatory. The purpose of a special interrogatory is not to instruct the jury. Its function is to require the jury's determination as to one or more specific issues of ultimate fact and is a check upon the deliberations of the jury. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) It is used for the purpose of testing the general verdict against the jury's conclusions as to the ultimate controlling facts. (*Wise v. Wise* (1959), 22 Ill. App. 2d 54, 159 N.E.2d 500.) Consequently, if there is a conflict between the answer to a special interrogatory and the general verdict, the special interrogatory controls. Ill. Rev. Stat. 1973, ch. 110, par. 65; *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16.

■■ As a means of testing the general verdict, it is not necessary that all of the elements of an issue be set forth in a special interrogatory. An interrogatory is proper when it relates to one of the ultimate facts upon which the rights of the parties directly depend, and some answer responsive thereto would be inconsistent with some general verdict that might be returned upon the issues in the case. The inconsistency, to be controlling, must be irreconcilable, so as to be incapable of being removed by any evidence admissible under the issues. (*Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 335 N.E.2d 774.) In *Robinson v. McDougal-Hartmann Co.* (1971), 133 Ill. App. 2d 739, 272 N.E.2d 513, a similar issue involving the loaned servant doctrine was presented. A special interrogatory, identical in form to the one in the instant case, was held to be in correct form and properly given. While plaintiff concedes the applicability of *Robinson* to the instant case, he contends that the holding in *Robinson* is incorrect in that the interrogatory concentrates on a single evidentiary point only. However, we reject plaintiff's contention, since we feel that *Robinson* is controlling of the issue. An affirmative answer to the interrogatory would have negated any favorable verdict plaintiff might have obtained. In view of the foregoing discussion, we hold that the interrogatory was in proper form.

Despite the propriety of the form of the special interrogatory, we must reverse since the interrogatory was inappropriately given to the jury in this case.

A special interrogatory should not be allowed to be submitted to the jury when it can confuse, mislead or prejudice a party. (See *A. H. Sollinger Construction Co. v. Illinois Building Authority* (1972), 5 Ill. App. 3d 554, 283 N.E.2d 508.) Thus, an interrogatory should use the same language or terms as are contained in the instructions. (*Hocking v. Rehnquist* (1968), 100 Ill. App. 2d 417, 241 N.E.2d 337, *reversed on other grounds* (1969), 44 Ill. 2d 196, 254 N.E.2d 515.) In the present case, error was committed by asking the jury whether Fitzsimmons was under the "control and direction" of plaintiff's employer without defining those terms, either by instructions (*Racine Fuel Co. v. Rawlins* (1941), 377 Ill. 375, 36 N.E.2d 710) or in the interrogatory itself. (*Shaver v. Berrill* (1976), 45 Ill. App. 3d 906, 358 N.E.2d 290.) Under the facts of this case, those words possessed a technical meaning which should have been explained to the jury.

■■ The interrogatory was given without accompanying instructions as to what constituted a valid defense under the "loaned servant" doctrine. This left it to the jury to determine for themselves what the terms "control and direction" meant without guidance from the court. Although counsel for both sides argued the issue, this does not serve as a substitute for proper instructions. Counsel were arguing positions favorable to their side, offering examples and analogies, not dispassionate statements as to what to consider in giving an answer to the interrogatory. This function was the responsibility of the trial court. Without proper instructions, it was error to submit the interrogatory.

As a consequence of the interrogatory being given, we believe that the jury could have rendered its verdict upon an improper basis. "Part of the rationale supporting the practice of propounding an interrogatory to a jury is that a jury more clearly comprehends a particularized special interrogatory than a composite of all the questions in a case, and therefore, presumably, the jury has more intensively focused its attention upon the question presented." (*First National Bank v. Szwankowski* (1969), 109 Ill. App. 2d 268, 275, 248 N.E.2d 517.) While it cannot be said with certainty that the jury's verdict turned on whether Fitzsimmons was a loaned servant, the error is such as to warrant a new trial.

■■ Defendants urge us to consider their contention that plaintiff waived any objection to the interrogatory since he did not specifically object at trial. "Special interrogatories must be tendered, objected to, ruled upon, and submitted to the jury just as instructions are. (Ill. Rev. Stat. 1969, ch. 110, par. 65.) It is well settled that to preserve an objection to an instruction or interrogatory upon review, the grounds for the

objection must have been specifically raised in the trial court, so that the trial court could be advised of the specific nature of the objection before ruling. Supreme Court Rule 239(b), Ill. Rev. Stat. 1969, ch. 110A, par. 239(b)." *Havlovic v. Scilingo* (1972), 7 Ill. App. 3d 918, 922, 289 N.E.2d 79, 82.

■■ We believe that plaintiff's objection was sufficiently specific to overcome any claim of waiver. Counsel for plaintiff objected to the interrogatory by stating:

"Your Honor, I object to the interrogatory, He has taken a position, Your Honor—Is it a matter of law? What's the court's position."

While perhaps inartfully phrased, it is evident from the record that counsel was at this point objecting to the interrogatory due to the court refusing to rule on whether Fitzsimmons was a loaned servant as a matter of law and because of the lack of explanatory instructions. This preserved the objection for appeal.

Lastly, plaintiff contends that the trial court erred in not directing a verdict for plaintiff at the close of all of the evidence. Verdicts should be directed only where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) An elaborate review of the facts of this case is unnecessary to conclude that this standard has not been met. The evidence of negligence was dependent upon the testimony of plaintiff and defendant. Given this state of the proofs, no verdict could properly be directed.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.