IRVIN L. NORTON, Plaintiff-Appellee, *v.* WILBUR WAGGONER EQUIPMENT RENTAL & EXCAVATING CO. *et al.*, Defendants.— (COLLINSVILLE COMMUNITY UNIT DISTRICT NO. 10, Defendant-Appellant.)

Fifth District No. 75-293

Opinion filed April 3, 1980.

Burroughs, Simpson, Wilson, Hapler & Broom, of Edwardsville, for appellant.

Earl L. Vuagniaux, of Edwardsville, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

The plaintiff, Irvin L. Norton, brought an action under the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*) in the circuit court of Madison County against defendants, Collinsville Community Unit District No. 10 (School District), Architectural Associates, Inc., and Wilbur Waggoner Equipment Rental and Excavating Co. (Waggoner) for injuries he sustained while working on the construction of a new school building. Both Waggoner and the architects were dismissed from the action without prejudice by Norton, Waggoner during a pretrial conference and the architects during trial. Following a jury trial, judgment was entered on a verdict of $175,000 in favor of plaintiff, and the School District appealed.

This is the second time we have considered this appeal. On the first occasion, this court, with one justice dissenting, reversed the trial court's judgment and held that the School District had not had sufficient connection with or control over the job to render it liable as an owner "having charge of" the construction of the building (Ill. Rev. Stat. 1971, ch. 48, par. 69). (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1977), 52 Ill. App. 3d 442, 367 N.E.2d 516.) Our supreme court thereafter granted plaintiff leave to appeal, and in a split decision held that there was sufficient evidence to support the finding that the School District had charge of the work (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1977), 76 Ill. 2d 481, 394 N.E.2d 403.) In addition, the supreme court remanded the cause to this court with directions to consider other issues raised by defendant but not addressed in our first opinion. Those issues are: (1) whether the plaintiff proved that the defendant's violation of the Act was "wilful"; (2) whether the trial court improperly excluded evidence relating to a loan receipt agreement; (3) whether the trial court improperly excluded evidence concerning plaintiff's use of heroin; (4) whether the trial court erred in sustaining

objections to certain questions asked on defendant's cross-examination; and (5) whether the trial court erred in refusing two special interrogatories tendered by defendant.

To establish the basic facts of the occurrence we need only reproduce one paragraph of our supreme court's opinion. Other facts will be supplied as necessary for understanding and resolution of the issues.

> "At the time of the injury, Norton was employed by R & R Construction Company, the general contractor for the project. In order to complete the construction of one of the buildings (E), a crane was used to lift large bundles of roofing material to the top of the building, where they were deposited on the bar joists located 22 feet above the floor level. Hoisting straps were attached to a hook, 8 to 10 inches long, which was immediately beneath a steel 'headache ball,' 10 to 12 inches in diameter and weighing 80 to 100 pounds, at the end of the crane's cable. Once these bundles were placed across the bar joists, which had no scaffolding beneath them, Norton would walk or crawl out on the bar joists or on the bundle itself, disconnect the hoisting straps, and drop them to the ground. On June 25, 1971, Norton crawled onto a bundle of roofing material to disconnect the hoisting straps. The crane operator, acting on relayed signals, inadvertently lowered the 'headache ball' and hook onto his back. Within a short time he experienced severe pain and was taken to a doctor's office." 76 Ill. 2d 481, 484-85, 394 N.E.2d 403, 404-05.

The School District's first contention on appeal is that the evidence at trial did not establish a "wilful" violation as required by section 9 of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 69).

The courts of Illinois have never construed the term "wilful" in section 9 in its ordinary sense. Rather, the courts have consistently held that a violation of the Structural Work Act is "wilful" when a person having charge of the work knew of the dangerous condition or, in the exercise of ordinary care, could have discovered the condition. *Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134; *Tenenbaum v. City of Chicago* (1973), 11 Ill. App. 3d 987, 297 N.E.2d 716; *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881; Illinois Pattern Jury Instructions, Civil, Nos. 180.01 and 180.14 and Comments (2d ed. 1971) (hereinafter IPI).

According to plaintiff's trial theory, the dangerous condition in this case was that in order to release the far hoisting strap, he, as a spotter, was compelled to climb onto the load and place himself under the headache ball by the defendant's failure to provide a scaffold or planking to work upon during the spotting of roofing material on the bar joists. The evidence presented at trial supplied a sufficient basis for the jury's finding

that the School District could have discovered this condition in the exercise of ordinary care. William Delaney, an employee of the School District and its clerk of the works at the jobsite, testified that he had been on bar joists at the site perhaps as many as 40 times before the accident. In addition, he had been on the particular joists involved here on two or three occasions. He knew there were no planks or scaffolding placed there and that men would be working on the joists, spotting bundles of roofing material, without the benefit of such aids. In fact, he had seen this operation performed before on the job but had never suggested that planks or scaffolding be used. When this actual knowledge of conditions is considered, it is evident that the trier of fact was justified in finding that the School District, through Delaney, could have anticipated and discovered the dangerous condition which resulted in Norton's injury. This is especially true since the testimony of Norton and other employees of the general contractor indicated that the customary practice on the job had always been to climb onto the load to reach the second hoisting strap.

Defendant's next contention is that the trial court improperly excluded evidence relating to a loan receipt agreement between plaintiff and defendant Waggoner. We cannot agree.

On December 13, 1974, plaintiff filed a motion seeking to dismiss voluntarily his cause of action against Waggoner without prejudice. This motion was apparently filed in anticipation of plaintiff's receiving a loan of $100,000 on behalf of Waggoner in exchange for executing a loan receipt agreement. Also on December 13, plaintiff filed a motion for a protective order which in part would prohibit defendants from making reference at trial to the loan receipt agreement or the dismissal of Waggoner. Both of these motions were taken up at a pretrial conference which took place on the first day of trial proceedings, December 16, 1974. After hearing arguments, the trial court granted plaintiff's motion to dismiss his cause of action against Waggoner. The School District then moved for a continuance to allow it time to consider what effect the loan agreement would have on the trial of the cause. After counsel for defendant conceded that he had received a copy of the agreement about a half hour before the conference and plaintiff indicated that he would not call any witness connected with defendant Waggoner, the trial court denied the School District's motion for a continuance. Thereafter, plaintiff offered into evidence a copy of the loan receipt agreement, dated December 14, 1974, and represented to the court that it was the only agreement which he and Waggoner had entered into. The court then granted plaintiff's motion to strike the School District's second affirmative defense which asserted that plaintiff had released his claim against the District by entering into the agreement with Waggoner. Arguments were then heard in reference to the motion for a protective order. The plaintiff

asserted that he was seeking the order in order to keep out references to the loan agreement that could be interpreted as going to the issues of liability and damages. He was not seeking to prevent the defendant from making any reference to the agreement but rather was seeking to ensure that any such reference would first have to be found relevant outside the presence of the jury by the court before defendant could make it. The trial court granted plaintiff's motion and ordered defendant not to make any reference to the loan agreement or question anyone about it without first obtaining leave of court.

■■ The law with respect to loan agreements is now well settled in Illinois. Such agreements, if disclosed to the nonloaning defendants, are valid and proper if they are executed before a judgment has been reached. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859; *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534.) Such was the case here. However, in order to counterbalance the undermining effect of such agreements on the adversarial nature of the proceedings, the nonloaning defendants must be allowed to establish the potential bias of witnesses connected with the loaning defendant by cross-examining them about their knowledge of the agreement's existence and by introducing the agreement, subject to an appropriate limiting instruction. *Reese v. Chicago Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382; *Kerns v. Engelke.*

■■ The School District makes two specific claims of error relating to the loan receipt agreement: (1) that the court erred in denying it a continuance; and (2) that the court erred in forbidding disclosure of the agreement "in any manner" to the jury. With respect to the continuance allegation, it asserts that the court's denial deprived it of the time "to inquire into the 'loan agreement' to determine whether a settlement had been reached which would effectively release the remaining defendants" and "to determine the facts surrounding the execution of the 'loan agreement' in order to learn [*sic*] possible bias of various potential witnesses at trial." Both of these bold assertions are curious grounds for requesting a reversal in this court. First, we must note that defendant has alleged no facts on appeal to establish that the loan receipt agreement was anything other than what it purported to be. In the absence of such evidence we cannot find that the trial court harmed defendant or erred in denying its motion for continuance. Nor can we find any basis for such a holding in defendant's assertion that the denial prevented it from learning of the possible bias of any witness. *Reese* and its progeny plainly indicate that the only witnesses whose credibility may be affected in a situation such as this are those who are employees of the loaning defendant or closely connected with it. Plaintiff's counsel indicated at the conference that he would call no witnesses so interested, and the record

corroborates his representation. Under these circumstances, there can exist no basis for reversing the trial court, since the record affirmatively shows that there were no plaintiff's witnesses who might have had such a bias.

The School District next contends that the trial court erred in precluding it from presenting testimony of plaintiff's alleged addiction to heroin. Defendant argues that such evidence would have been relevant to the questions of plaintiff's credibility and the proper measure of his damages.

■■ We must note that the protective order relating to evidence of drug usage directed that such evidence be kept out "until such time as the Court has been advised by counsel and ruling has been obtained from the Court." After examining the portions of the record where the admissibility of drug-related evidence was apparently argued, we cannot find that defendant has adequately preserved a record for the assertion of error on appeal. The first discussion occurred in a conference on the evidentiary deposition of Dr. Meirink. Although it is evident from the record that defendant argued during this conference to keep in some references to heroin, neither the testimony's substance nor its relevance was established by the defendant. Similarly, a discussion was conducted later with respect to plaintiff's having been arrested a few weeks before trial. This discussion was initiated through plaintiff's motion for a protective order. Defendant again failed to establish the substance of any testimony by an offer of proof or to assert its relevancy. Defendant merely stated that it objected to the plaintiff's motion because a ruling on it would be premature. Under these circumstances, we cannot consider the propriety of the court's rulings since the record is inadequate to show what was kept out. Defendant had the burden of making a record and must bear the consequences of his failure to do so.

Defendant's next contention is that the trial court erred in sustaining objections to certain questions asked by it on cross-examination of four witnesses, including plaintiff. Defendant asserts that these questions were relevant either to the question of whether it was guilty of a wilful violation of the Act or whether the sole proximate cause of Norton's injury was the conduct of someone other than the School District.

It would be fruitless to set out all of the many questions which defendant asserts were improperly objected to. We have examined the record and find that the trial court's rulings on them were entirely correct with the exception of three instances.

◢◣ ■ During defendant's cross-examination of Orville Meadows, an R & R employee who was both the man in charge of the landing of the roofing material and a union steward, the following exchange occurred with respect to two questions:

"[Defense counsel]: Was there any complaint made sir, before this accident about the manner of unloading those things on those joists?

A. No. sir.

MR. VUAGNIAUX: Your Honor, I am going to object that this is immaterial and irrelevant whether there was any complaint.

THE COURT: Sustained.

Q. Was any complaint made, did you report any complaint to Mr. Fontana about the lack of planks for that unloading job?

MR. VUAGNIAUX: Your Honor again I'm going to make the same objection.

THE COURT: I'll sustain it."

Although both of these questions were relevant to the issue of whether the School District knew of or, in the exercise of ordinary care, could have discovered the dangerous condition involved here, we cannot find that the School District was prejudiced by the exclusion of these questions. It is well settled that not every trial error will vitiate a verdict; in order to be reversible, the error must be one which was prejudicial to defendant's rights and without which the verdict might have been different. (*Adamaitis v. Hesser* (1965), 56 Ill. App. 2d 349, 206 N.E.2d 311; *In re Wellington* (1975), 34 Ill. App. 3d 515, 340 N.E.2d 31.) As our discussion of the wilful violation issue demonstrated, there was more than sufficient evidence presented at trial to establish the School District's constructive knowledge of the condition. We cannot say that the jury's verdict would have been different had defendant established that no prior complaint about the lack of scaffolding had been made.

■■■ The trial court also erred in sustaining an objection to a hypothetical question asked of Warren Hargreaves, a Missouri safety inspector. The question sought his opinion as to whether the lowering of the headache ball was a cause of the plaintiff's injury. This question, which merely asked the obvious, may not have been objectionable; however, the refusal of it cannot be said to have resulted in any prejudice to defendant since the question did not seek an opinion whether the crane operator's conduct was the sole cause of plaintiff's injury but simply whether it was *a* cause. It is well established that more than one person may be to blame for causing an injury and that liability under the Act is imposed regardless of the fault of another. (IPI Civil Nos. 180.18 and 180.19; *Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134.) Under these circumstances, we find no reversible error.

■■■ The School District's final contention is that the trial court erred in refusing to submit two special interrogatories which read as follows:

"Do you find, from the evidence, that shortly prior to and at the time of plaintiff's injury there were acts or omissions on the part of

the defendant School District that constituted a wilful violation of the Statute mentioned in the instructions?" (Defendant's special interrogatory No. 1.)

"Were the acts or omissions of the defendant School District, as shown by the evidence, wilful violations of the Structural Work Act?" (Defendant's special interrogatory No. 2.)

Special interrogatories are used to test the general verdict against the jury's conclusions concerning the ultimate controlling facts. (*Scully v. Otis Elevator Co.* (1971), 2 N.E.2d 185, 275 N.E.2d 905; *Department of Transportation v. Bryant* (1978), 63 Ill. App. 3d 483, 380 N.E.2d 464.) When a special interrogatory is in proper form, the trial court has no discretion but to submit it to the jury. (*Scully v. Otis Elevator Co.*) However, the special interrogatory must relate to an ultimate issue of fact. (*Tipsword v. Melrose* (1973), 13 Ill. App. 3d 1009, 301 N.E.2d 614; *Scully.*) While the School District's special interrogatories were couched in the language of the Act, they were not properly related to an ultimate issue of fact. This is true since the interrogatories simply asked the jurors whether the defendant's conduct was a "wilful" violation. As we have already stated, the courts have not construed that term in its ordinary sense of reckless disregard, but rather in the sense of "knowing," whether actual or constructive. (See *Tenenbaum* and *Davis v. Commonwealth Edison Co.*) In fact, for this reason the term wilful is scrupulously avoided in the pattern instructions for Structural Work Act cases. (IPI Civil No. 180.01, Comment, at 467-68 (2d ed. 1971); see also IPI Civil No. 180.14 and Comment.) Under these circumstances, we find that the trial court properly refused to submit the interrogatories. They could only have served to mislead and confuse the jury, which was never given a definition of "wilful." Moreover, in the absence of such a definition, it would have been impossible to test the general verdict with these interrogatories.

For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

KASSERMAN and SPOMER, JJ., concur.