BARNETT A. SHAHEED, Plaintiff-Appellee, v. CHICAGO TRANSIT AU-
THORITY *et al.*, Defendants-Appellants (Blinderman Construction Company,
Inc., Third-Party Plaintiff-Appellant, v. Archway Steel Erection Company,
Inc., Third-Party Defendant-Appellee).

First District (4th Division)   No. 84—1248

Opinion filed October 10, 1985.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, Shaun McParland, and Sara E. Cook, of counsel), for appellants.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Curt N. Rodin, Nat P. Ozmon, and Dario A. Garibaldi, of counsel), for appellee Barnett A. Shaheed.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan, of counsel), for appellee Archway Steel Erection Company, Inc.

JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Blinderman Construction Company (Blinderman) and the Chicago Transit Authority (CTA), and third-party defendant, Archway Steel Erection Company (Archway), appeal from a judgment of the circuit court of Cook County. A jury found defendants liable to plaintiff, Barnett A. Shaheed, under the Structural Work Act. (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) The jury awarded plaintiff $750,000 in damages, assessing 40% liability to Blinderman, another 40% to the CTA, and 20% to Archway, for injuries plaintiff suffered when he fell from a column supporting a platform at a CTA rapid transit station.

Defendants appeal from the judgment entered on the verdict, contending that (1) plaintiff failed to prove a *prima facie* case under the Structural Work Act, (2) the jury's verdict was against the manifest weight of the evidence, (3) the trial court should have applied the doctrine of comparative fault, (4) the trial judge improperly limited defendants' cross-examination of plaintiff's witnesses, (5) the jury's award to plaintiff was outrageous and excessive, and (6) the trial judge improperly instructed the jury on the law and that a special interrogatory was appropriate.

Blinderman further appeals from the third-party action against Archway, contending that the trial judge erred in (7) finding as a matter of law that Blinderman was actively negligent, thus, not entitled to indemnity from Archway; (8) dismissing Blinderman's breach of contract action against Archway; and (9) refusing to instruct the jury on the law relating to the third-party claim. Blinderman lastly contends that (10) the jury's assessment of liability between it and Arch-

way was against the manifest weight of the evidence.

We affirm as modified.

The record shows that defendants were operating a platform extension project at the Central Park rapid transit station near 1932 South Drake Avenue, in Chicago. Blinderman hired the third-party defendant, who in turn hired plaintiff, an ironworker with approximately 12 years' experience. Plaintiff testified at trial that on several occasions on April 15, 1980, he climbed a column that supported the station to reach his jobsite. Plaintiff further testified that when he reached the top of the column during his last climb, approximately 20 feet above the ground, he slipped and fell on his right ankle, fracturing it.

On October 6, 1980, plaintiff filed a complaint against defendants, alleging that they were subject to the Structural Work Act, that they were in charge of the construction project, and that he climbed the column to reach his jobsite because defendants failed to supply him with either ladders or scaffolding.

Defendants answered the complaint by denying all material allegations except their contract to build the platform extension. Blinderman then filed a third-party complaint against Archway seeking common law indemnity, alleging that Archway's negligence was active and major, while its negligence, if any, was passive and minor, and also because Archway breached its contractual duty to maintain insurance with a contractual liability clause or a hold-harmless endorsement that named Blinderman as an additional insured. Blinderman also sought contribution from Archway to the extent any liability was established against it.

The trial judge dismissed the contractual indemnity count in Blinderman's third-party complaint, ruling that the indemnity obligations under the contract were void and that any promise to procure insurance for their indemnity obligations also was void. At the close of all the evidence, the trial judge granted Archway's motion for a directed verdict on the common law indemnity count in the third-party complaint, ruling that Blinderman had been actively negligent as a matter of law. The trial judge, therefore, instructed the jury only on the contribution theory. After the jury returned a verdict in favor of plaintiff, the trial judge denied defendants' post-trial motion seeking a judgment notwithstanding the verdict, a new trial, or a remittitur. The trial judge also denied Blinderman's motion seeking reinstatement of its indemnity count and a new trial on the third-party complaint. Defendants appeal.

I

Defendants first contend that the trial judge erred in denying their motion for a directed verdict or a judgment notwithstanding the verdict because plaintiff failed to prove all of the necessary elements of a Structural Work Act violation.

In an action under the Act, a plaintiff must prove that (1) he was engaged in or was passing under or by a structural activity, (2) the activity was being performed with reference to a structure, (3) a scaffold or other mechanical device was being used, (4) a defect existed in the construction or use of the device, (5) the defect proximately caused his injuries, (6) the defendant had charge of the work, and (7) the defendant wilfully violated the Act's safety standard. (*Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 848, 463 N.E.2d 921, 924.) Defendants argue that plaintiff failed to prove the third, fifth, and seventh elements.

A. Defendants first contend that the column from which plaintiff fell was not scaffolding or a mechanical device. Relying on *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 355 N.E.2d 164, defendants argue that plaintiff's election to use a short cut to reach his jobsite, when they provided a safe and permanent means of access, is not a basis for liability under the Act. (41 Ill. App. 3d 930, 933.) Plaintiff responds by invoking *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, which held that the failure to provide suitable ladders and scaffolding is a violation of the Act. 39 Ill. 2d 445, 449.

■ We agree with plaintiff. Defendants dispute that the Act required them to provide scaffolding in addition to an existing means of access. However, the cause of action that our supreme court created in *Louis v. Barenfanger* nonetheless lies, with the material issue of whether defendants provided plaintiff with a safe means of access being a question for the jury to resolve. We hold that plaintiff met this element of a Structural Work Act violation and that the issue was properly before the jury.

■ B. Defendants next contend that plaintiff failed to show that their negligence was a proximate cause of his injuries. They argue that the availability of alternative means of access to plaintiff's jobsite made his act of climbing the column the sole proximate cause of his injuries. Plaintiff responds by contending that the route defendants provided was unsafe; as a result, he and other ironworkers used the columns to reach their jobsites.

The question of proximate cause under the Structural Work Act is ordinarily a question of fact for the jury and becomes a question of law only when facts are undisputed and where there can be no difference in the judgment of reasonable persons on the inferences to be drawn from the facts. (*St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 524, 439 N.E.2d 12, 16.) Since the issue of whether defendants provided plaintiff with a safe means of access to his jobsite is disputed, we conclude that plaintiff met this element of a Structural Work Act violation, and that the issue was properly before the jury.

■ C. Defendants lastly contend that plaintiff failed to prove that their conduct was wilful within the meaning of the Act. In *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 289 N.E.2d 12, this court stated:

> "Our courts have consistently held that the word 'wilful' as used in this context is quite different from the familiar phrase 'wilful and wanton.' The essence of the Structural Work Act is not to be found within the concept of knowing or intentional misconduct or even that of reckless disregard. Liability exists where the existence of dangerous conditions could have been ascertained by the exercise of reasonable care." 7 Ill. App. 3d 888, 897.

Whether defendants provided plaintiff with a safe means of access to his jobsite and whether plaintiff's use of the column should have been discovered by the exercise of reasonable care were questions of fact for the jury. Since the testimony on the issue was conflicting and since we cannot say that the verdict was against the manifest weight of the evidence, we may not disturb it on appeal. (7 Ill. App. 3d 888, 897.) We conclude that plaintiff met this element, as well as the other elements, of a Structural Work Act violation and that the trial judge properly denied defendants' motion for a directed verdict or a judgment notwithstanding the verdict.

## II

■ Defendants next contend that the trial judge erred by refusing to apply the doctrine of comparative negligence to the conduct of plaintiff in this action brought under the Structural Work Act.

In *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, our supreme court rejected this argument, holding that "[t]he Act, first passed as an exception to the common law, can only continue to remedy the evil envisioned by the legislature by excluding any consideration of the plaintiff's alleged fault." (104 Ill. 2d 444,

461.) Since the sole inquiry under the Act is an assessment of a defendant's culpability and not a plaintiff's conduct, the court concluded that "[c]omparative negligence must be disregarded so as to conform with the legislature's intent ·which was to afford complete protection for construction workers." (104 Ill. 2d 444, 461.) The court recently reaffirmed this conclusion in *Prewein v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 141. We conclude that the trial judge properly refused to apply the doctrine of comparative fault to this Structural Work Act case.

### III

■ Defendants next contend that the trial judge improperly limited their cross-examination of plaintiff and his medical expert on the issue of plaintiff's myocarditis, a heart condition. Defendants claim that the ailment, although having a significant impact on plaintiff's future employability, was totally unrelated to his injuries in this case and that the trial judge prevented their cross-examination on the issue other than to establish that he was hospitalized once for it.

It is within the discretion of the trial court to exclude evidence not directly related to the matter at hand where the confusion of issues resulting from its admission would outweigh its probative value. (*Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 97, 450 N.E.2d 402, 409.) Evidence of an injured person's general health and physical condition, both before and after the injury, is admissible to show the extent, nature and probable effect of the injury and the cause of the subsequent physical condition. Such evidence, however, must be sufficiently connected with the injury to be material to the issue of damages. 115 Ill. App. 3d 88, 96.

Defendants argue that plaintiff's myocarditis has a significant impact on his future employability and, therefore, the trial judge deprived them of possible proof that plaintiff's future inability to work would not be caused by his ankle injury. Defendants are correct, however, when they state that plaintiff's heart condition has nothing to do with the ankle injury he sustained on the jobsite and for which he brought this action under the Structural Work Act. Any further questioning on the subject of myocarditis would only have confused the jury on the real issue of plaintiff's ankle injury. We hold that the trial judge properly limited defendants' cross-examination on the issue of plaintiff's myocarditis.

### IV

■ Defendants next contend that the trial court erred by not

granting them a new trial on all issues because the jury's award of $750,000 was outrageous and excessive, and because plaintiff's closing argument confused the jury as to the proper calculation of future wage loss.

A. An award of damages is excessive and unfair if the amount falls outside the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. Damages are particularly within the province of the trier of fact and a reviewing court will not disturb them on appeal unless obviously the result of passion or prejudice. (*King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 359, 384 N.E.2d 22, 25.) The reviewing court should examine such factors as the primacy and extent of the injuries suffered, plaintiff's age, the possibility of deterioration in the future, the medical expenses incurred, past and future wage losses and any restrictions that the injuries may have placed on the daily activities of the plaintiff. *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 757-58, 460 N.E.2d 28, 38, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.

The record shows that plaintiff is 36 years old. There was evidence at trial that plaintiff's ankle injury prevented him from working in the ironwork industry. There was further evidence that a journeyman ironworker earned $22.96 per hour in 1983, which amounted to $35,817.60 for working nine months out of the year. Also, plaintiff presented evidence that he was one of only 10% of journeyman ironworkers who can work with ease at great heights and that, as a result, he could find work in times of economic recession. Plaintiff also presented evidence that he could expect to work for approximately another 20 years. With this evidence, we believe that the award of damages lies within the realm of reasonable compensation.

■ B. Defendants further contend that plaintiff's closing argument confused the jury as to the proper calculation of future wage loss. Plaintiff's counsel stated, in part, as follows:

"MR. RODIN: I'm permitted to make recommendations to you for each of these items of damages. You can give more, you can give less. It's completely up to you. ***.

* * *

Then from January of '83 to the present. You recall that when Barnett went back to work, he was able to return one complete full year, 1982, and he made thirty-two thousand dollars that year. If you use that as a base year, where if he was not injured, he could have worked a full year—actually it wasn't a full year. That was, I think it came out to about eight months in that year for thirty-two thousand dollars.

\*\*\*. And then future you are to determine. If you just multiply thirty-two thousand a year, figuring that there wouldn't be inflation, that he wouldn't get raises as time goes on, that times twenty-four years—not thirty-three, because I only figured that till Barnett is sixty, figuring that in an active type of job like this he would most likely retire at sixty rather than working till sixty-five like most people do—figure conservatively, sixty, that comes to seven hundred and sixty-eight thousand dollars.

But the judge will tell you that you are not supposed to simply multiply the amount of money by the number of years. You are supposed to reduce that to present cash value, and he'll give you an instruction on that, which is very confusing. But I can tell you that a fair and reasonable reduction of that is to cut it in half, and that would come to three hundred and eighty-four thousand dollars, which simply means that amount of money given to Barnett today, which would represent seven sixty-eight over the next twenty-four years.''

Defendants claim that plaintiff's suggestion of $768,000 in lost future earnings was conjecture, unsupported by the evidence and contrary to the law they received from the trial judge, found in Illinois Pattern Jury Instruction (IPI), Civil, No. 34.04 (2d ed. 1971). The judge gave the instruction, in part, as follows:

" 'Present cash value' means the sum of money needed now, which, when added to what the sum may reasonably be expected to earn in the future, will equal the amount of the damages, expenses, earnings and benefits at the time in the future when the damage from the injury will be suffered, the expenses must be paid, and the earnings and benefits would have been received.''

Defendants contend that plaintiff's closing argument conflicted with the judge's instructions to the jury and that the conflict resulted in confusion, producing an excessive verdict.

A party is entitled to have the jury instructed on its theory of recovery so long as that theory is supported by the evidence and reasonable inferences therefrom. Plaintiff himself may testify that his injuries diminished his capacity to work, and the appearance of plaintiff on the witness stand and his testimony as to the nature of his injuries and their duration is sufficient to take the question of impaired earning capacity to the jury. (*Harris v. Day* (1983), 115 Ill. App. 3d 762, 772, 451 N.E.2d 262, 267.) The record contains evidence that plaintiff's injury was permanent and also that his injury prevented him

from continuing his employment. We conclude that there was sufficient evidence for the jury to arrive at a calculation for lost future wages without undue danger of speculation or conjecture.

After reviewing the record, we cannot say that the jury's verdict was based on confusion. The jury had the duty to weigh all material relating to plaintiff's alleged loss of future earnings and they were properly instructed on how to determine present cash value. (IPI Civil 2d No. 34.04.) The formula for calculating present cash value is implicit in the instruction (*Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 725, 449 N.E.2d 250, 254), and we note that defendants do not contest the correctness of the instruction or the definition therein contained. We will not interfere with the jury's verdict absent some clear error.

## V

■ Defendants next contend that two jury instructions were duplicative and, therefore, prejudicial. Defendants further contend that the trial court erred by refusing to give the jury a special interrogatory.

A. The trial judge submitted both IPI Civil 2d Nos. 180.14 and 180.15 to the jury. Instruction No. 180.14 states that the Structural Work Act was violated if the support or other device in question was placed or used in a manner or under circumstances that was not safe to give adequate protection to any employee, and the defendant knew of the condition or operation or could have discovered it in the exercise of ordinary care. Instruction No. 180.15 states that the Act was violated if a person having charge of the work failed to provide a support or other device under circumstances that required the device to protect plaintiff from harm, and the defendant knew, or should have known in the exercise of ordinary care, that the device was required. Defendants claim that the trial judge should have given the jury Instruction No. 180.14 alone because it was all encompassing and because it created an impression that they had in fact violated the Act.

We disagree. IPI Civil 2d No. 180.14 defines a violation of the Act by *commission*; No. 180.15 defines a violation of the Act by *omission*, based expressly on *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 447, 236 N.E.2d 724, 726. (IPI Civil 2d No. 180.15, Comments.) Because plaintiff pleaded both theories, the trial judge properly instructed the jury on both theories.

■ B. Defendants next contend that the trial judge erred by refusing to submit to the jury a special interrogatory that asked the jury whether plaintiff's conduct was the sole proximate cause of the damages he sustained.

The purpose of a special interrogatory is not to instruct the jury. Its function is to require the jury's determination as to one or more specific issues of ultimate fact and is a check upon the deliberations of the jury. It is used to test the general verdict against the jury's conclusions as to the ultimate controlling facts. Consequently, if there is a conflict between the answer to a special interrogatory and the general verdict, the special interrogatory controls. *Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 443, 370 N.E.2d 1131, 1134, *rev'd on other grounds* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.

Defendants correctly cite *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1980), 82 Ill. App. 3d 727, 735, 403 N.E.2d 108, 114, and *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 926, 404 N.E.2d 265, 271, for the proposition that a trial court must submit a special interrogatory if it involves an ultimate question of fact and if it is in proper form. However, a trial judge should not submit a special interrogatory to the jury when it can confuse, mislead, or prejudice a party. *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 452, 158 N.E.2d 63, 69; *Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 530-31, 418 N.E.2d 822, 825; *Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 444.

An action under the Structural Work Act focuses on a defendant's conduct and not that of plaintiff. The tendered special interrogatory on plaintiff's conduct could have confused, misled, or prejudiced plaintiff's case. We find no error in the trial judge's refusal to submit to the jury defendants' special interrogatory.

### BLINDERMAN v. ARCHWAY

### VI

■■ Blinderman further appeals from the directed verdict in favor of Archway on the common law indemnity count, contending that the trial judge erred in finding as a matter of law that Blinderman was actively negligent and, thus, not entitled to indemnity from Archway. In response, Archway, in addition to arguing the active/passive negligence theory, further contends that the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*) extinguished the entire action of common law indemnity, relying on *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653.

We held in *Morizzo* that the Contribution Act extinguished common law indemnity actions with two possible exceptions that Illinois courts have recognized: cases involving some pretort relationship whereby one party becomes vicariously liable for another (*e.g.*, em-

ployer-employee, owner-lessee, master-servant) or an upstream claim of strict liability for an unreasonably dangerous or defective product. (127 Ill. App. 3d 767, 774.) One justice in *Morizzo* disagreed with these exceptions and would have held that the Contribution Act extinguished the common law indemnity action entirely. (127 Ill. App. 3d 767, 775 (Downing, J., specially concurring).) The Appellate Court for the Fifth District has recently adopted this view. *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383.

Blinderman alleged no pretort relationship between itself and Archway. Thus, Blinderman's claim did not fall within the exceptions to the Contribution Act that Illinois courts have created. We hold that the trial judge should have dismissed the indemnity count rather than enter a directed verdict thereon, and we, therefore, modify the trial court's order accordingly.

Referring to the above discussion, we further hold that the trial judge did not err in refusing to instruct the jury on the issue of active/passive indemnity.

## VII

■■ Blinderman next contends that the trial judge erred in dismissing its claim against Archway for contractual indemnity. Blinderman bases this claim on paragraphs 3 and 5 of its contract with Archway, which states as follows:

"3. Insurance

Subcontractor shall maintain insurance in the following limits and cause a so-called contractual liability and/or hold harmless endorsement to be issued by the insurance company or companies insuring all the Subcontractors indemnity obligations under this agreement and shall furnish to Contractor certificates of insurance evidencing such insurance and providing that such insurance may not be cancelled without the insurer giving thirty (30) days notice in writing to Contractor. ***.

* * *

5. Liability and Indemnification.

Subcontractor agrees that it shall indemnify and hold harmless Contractor from and against any and all loss, damage and liability and from any and all claims for damages on account of or by reason of bodily injury, including death, which may be sustained or claimed to be sustained by any person, including the employees of Subcontractor, and from and against any and all damages to property, including loss of use, and including property of Contractor, caused by or arising out of or claimed

to have been caused by or to have arisen out of an act or omission of Subcontractor or its agents, employees or Subcontractors in connection with the performance of this Contract, or caused by or arising out of or claimed to have been caused by or to have arisen out of the concurrent negligence of Contractor, its agents and employees, in connection with the performance of the Subcontract; provided, however, that the foregoing indemnification shall not cover loss, damage or liability arising from the sole negligence of Contractor, its agents and employees; and Subcontractor shall at its own cost and expense defend any such claim, suit, action or proceeding, whether groundless or not, which may be commenced against Contractor by reason thereof or in connection therewith, and Subcontractor shall pay any and all judgments which may be recovered in any such action, claim, proceeding, or suit, and defray any and all expenses, including costs and attorneys' fees which may be incurred in or by reason of such actions, claims, proceedings or suits. The Subcontractor agrees also to make no claim against Contractor for the failure to act, delay or negligence of any other Subcontractor of the Contractor."

The trial judge found that section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1983, ch. 29, par. 61) (hereinafter the Indemnity Act) nullified any indemnification that Blinderman required Archway to provide under paragraph 5 of the contract. The judge further found that paragraph 3 of the contract, which refers to Archway's duty to obtain insurance, requires insurance only for the indemnity obligations under the contract. Since the only contractual indemnity obligations are found in paragraph 5 and since that paragraph was void, the trial judge concluded that there were no contractual obligations that required Archway to buy insurance.

Section 1 of the Indemnity Act declares that, in construction contracts, any promise to indemnify or hold harmless another person from that person's own negligence is against public policy and void. (Ill. Rev. Stat. 1983, ch. 29, par. 61.) Blinderman relies on the rule of strict construction of indemnity contracts: that an indemnity contract should not be construed as indemnifying one against that person's own negligence absent clear and explicit contractual language to that effect. (*Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604.) While the *Westinghouse* rule still applies to indemnity provisions not covered by the Indemnity Act, there is no longer any reason for the rule where clauses in con-

struction contracts are concerned and the rule is ineffective as to those provisions. See *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 445 N.E.2d 934; *Cox v. Lumbermans Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 439 N.E.2d 126.

Blinderman points to *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189, as an example of an indemnity agreement that this court approved. We distinguish the indemnity provision in *Zettel* from that in the case at bar. We held that the agreement in *Zettel* was one to procure insurance against claims brought under the Structural Work Act and not one insuring an indemnity provision against the Act. (100 Ill. App. 3d 614, 617-18.) *Zettel* granted insurance against a known risk, the Structural Work Act, while Blinderman sought insurance against a void agreement to indemnify. We hold that the trial court did not err in dismissing Blinderman's contractual indemnity claim against Archway.

## VIII

■■ Blinderman lastly contends that the jury's apportionment of damages in the contribution action against Archway, which found that Archway was responsible for only 20% of the damages, was against the manifest weight of the evidence. After reviewing the record and referring to *King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 359, 384 N.E.2d 22, 25, we hold that the jury made its determination without passion or prejudice.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified by this opinion.

Affirmed as modified.

JIGANTI, P.J., and LINN, J., concur.